**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BILLY BURKETTE**                                          **CIVIL ACTION NO.**

**VERSUS**

**EAST FELICIANA PARISH**                          **18-996-JWD-EWD**
**SHERIFF JEFFREY TRAVIS, ET AL**.

<u>**NOTICE**</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 23, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**BILLY BURKETTE**                                                   **CIVIL ACTION**

**VERSUS**

                                                                    **NO. 18-996-JWD-EWD**

**EAST FELICIANA PARISH**
**SHERIFF JEFFREY TRAVIS, ET AL**.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss, filed by Defendants Greg Phares ("Phares") and Jeff Travis ("Travis") (collectively "Sheriff Defendants"), which is opposed by Billy Burkette ("Plaintiff").[1] The Sheriff Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims. Plaintiff's § 1985 conspiracy claims and official capacity claims fail to state a cause of action. Plaintiff's claim for an injunction is moot and/or is not warranted on the facts alleged. Since all federal claims are subject to dismissal, supplemental jurisdiction should be declined over the state law claims. Therefore, it is recommended[2] that the Motion be granted, dismissing Plaintiff's claims against the Sheriff Defendants with prejudice, as further leave to amend is not warranted.

### I.    BACKGROUND

On November 2, 2018, Plaintiff filed his Complaint for a temporary restraining order and preliminary and permanent injunctions asserting federal constitutional and state constitutional and tort claims against defendants former Louisiana Secretary of State Kyle Ardoin ("Ardoin"); former Attorney General Jeff Landry ("Landry"); former Louisiana State Police Investigator William Cox

---

[1] R. Doc. 74.  At the time the Motion was filed, Plaintiff was represented by counsel, who filed an opposition memorandum on his behalf. R. Doc. 85. Following a hearing at which Plaintiff appeared, Plaintiff's counsel was subsequently permitted to withdraw from representation. R. Docs. 154-55.

[2] The Motion was referred to the undersigned for Report and Recommendation. R. Doc. 171.

("Cox"); East Feliciana Parish Sheriff, Travis; and former Chief Deputy, Phares.[3]  In response to the Sheriff Defendants' first Motion to Dismiss,[4] Plaintiff filed his "First Amended Complaint to Supplement and Amend to Add Monetary Damages," which named the same defendants and asserted the same claims, but added claims for damages, as well as additional factual allegations.[5]

The First Amended Complaint is comprised of Plaintiff's lengthy "Official Statement of Facts," which provides Plaintiff's version of various events spanning several years that purportedly give rise to his claims.[6]  Plaintiff's factual allegations are presumed true for the purposes of these Motions, and only the relevant facts follow.[7] Plaintiff states that he is Native American and, at the relevant times, was the chief of police for his tribe, the Louisiana Band of Choctaw Indians ("LBC").  Plaintiff contends the LBC is recognized by the State but not by the federal government.[8] In approximately March 2015, as part of an effort to obtain federal recognition of the LBC,[9] Plaintiff applied for and received what he refers to as a "Chief of Police commission" from the Louisiana Secretary of State (the "SOS commission").[10]  Plaintiff then created a tribal police

---

[3] R. Doc. 1. In 2024, Ardoin was succeeded as Secretary of State by Nancy Landry.  In 2024, Landry became the Governor of Louisiana and was succeeded as Attorney General by Elizabeth Murrill.  Plaintiff alleges that Phares left the East Feliciana Sheriff's Office, and that Cox is currently employed in Phares' former position as Chief Deputy under Travis. R. Doc. 114, p. 2.  As discussed below, Plaintiff's request for a TRO and injunctions were related to a political election that took place on November 6, 2018, in which Plaintiff was a candidate for a Congressional seat. R. Doc. 1, p. 21.

[4] R. Doc. 12.

[5] R. Doc. 13.

[6] Although sometimes referred to by Plaintiff as an "affidavit of events," the "Official Statement of Facts" in the original and First Amended Complaints is not notarized nor made under penalty of perjury. *See* R. Doc. 1, pp. 2-23 and R. Doc. 13, pp. 3-23.  Allegations and procedural history that are not material to the Motions are not discussed.

[7] *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Garig v. Travis,* No. 20-654, 2022 WL 868519, at *1 (M.D. La. Mar. 22, 2022) (deGravelles, J.), citing *Thompson v. City of Waco, Tex.,* 764 F.3d 500, 502-03 (5th Cir. 2014).

[8] R. Doc. 13, p. 3, R. Doc. 13-2, and R. Doc. 13-14.  As discussed below, Plaintiff contends that an opinion issued by Landry at Plaintiff's request disagrees that the LBC is officially recognized by the State, and that Phares violated Plaintiff's "Native American Rights," presumably by stating that the commission issued to Plaintiff by the Secretary of State's Office did not confer law enforcement power in East Feliciana Parish.  *See* R. Doc. 13, ¶ 50.

[9] Plaintiff alleges that federal recognition under "U.S.C. Title 25" requires a tribal law enforcement department. R. Doc. 13, p. 3.

[10] Plaintiff claims to have received the SOS commission after providing the Secretary of State with a notarized letter in November 2014 indicating that he had been elected police chief by LBC.  R. Doc. 13, p. 3 and R Doc. 13-2.

badge.[11]  Plaintiff alleges that shortly after he created his badge, a Louisiana State Police ("LSP") investigator contacted him to verify his badge and commission. The investigator reviewed Plaintiff's paperwork and told Plaintiff that, because he was Native American and the LBC police chief, he was "exempt from having to be POST certified and joining the Louisiana Enforcement Council" and was cleared to obtain a badge.[12]

During the flooding that took place in 2016 in East Baton Rouge Parish and surrounding areas, Plaintiff assisted Travis and Phares with obtaining supplies to assist in the relief effort, including a boat from Cabela's.[13]  A few months later, Phares notified Plaintiff that he was being investigated for obtaining the boat (the "2016 investigation"), which had been invoiced to the East Feliciana Parish Sheriff's Office.  After meeting with Travis, Plaintiff went to Cabela's and paid for the boat.[14]

In May 2018, Plaintiff wrote to Landry's office requesting an opinion regarding the LBC's claimed inherent rights to hunt, fish, trap and gather on their lands and their eligibility for, or exemption from, receiving licenses to do so.[15]  Plaintiff contends that Landry's opinion, which is not in the record, failed to recognize the LBC's rights to hunt, fish, and trap on their land and erroneously stated that the LBC is not officially recognized by the State.[16]

In early July 2018, Plaintiff visited the Department of Motor Vehicles in Clinton, Louisiana while armed to assist his daughter in obtaining a driver's license.  Plaintiff engaged in an exchange with DMV employee "Marie Taylor," who questioned Plaintiff's possession of a firearm in a state

---

[11] R. Doc. 13, pp. 3-4, R. Docs. 13-3 and 13-4.
[12] R. Doc. 13, pp. 4-5.
[13] R. Doc. 13, pp. 5-6.
[14] R Doc. 13, pp. 6-7.
[15] R. Doc. 13, p. 5, and R. Doc. 13-15, which appears to part of Plaintiff's request for the opinion. It is unclear from the First Amended Complaint whether the LBC sought licenses, or exemptions from license requirements.
[16] R. Doc. 13, p. 22.

building.  Plaintiff stated that he had the authority to carry the firearm and showed Taylor his SOS commission.[17]  Several days later, Phares contacted Plaintiff and asked if Plaintiff was still running in the 2018 Congressional election.  When Plaintiff confirmed his expected candidacy, Phares replied: "We will see about that."  Phares then told Plaintiff that Taylor had filed a complaint against him for carrying his firearm in the DMV, and because the commission "looked funny."  Phares would not provide Plaintiff a copy of Taylor's complaint, but requested a copy of Plaintiff's SOS commission, which Plaintiff contends he gave to his attorneys to send to Phares.[18]

On July 20, 2018, Plaintiff visited the SOS office to qualify as a candidate in the November 6, 2018 election for a Congressional seat.[19]  Plaintiff completed his paperwork, talked to reporters and then exited the building.  As Plaintiff prepared to enter his vehicle to depart, two deputies of the East Baton Rouge Parish Sheriff's Office asked if he would accompany them back inside the building, to which Plaintiff agreed.  Once inside, the deputies advised Plaintiff that they had two warrants for his arrest for impersonating a police officer.  Plaintiff was arrested and his requests to see the warrants were denied.[20]  Plaintiff requested not to be handcuffed until outside the building since he was running for U.S. Congress.  He says the deputies originally agreed to escort Plaintiff out the side door of the building; however, as they were approaching that door, an SOS representative stated that "Secretary Kyle Ardoin said to make him walk out the front doors so the news people can see him being arrested."[21]  Plaintiff was escorted out the front door where thirty to forty people were assembled, including news media with cameras, and his arrest was widely

---

[17] R. Doc. 13, pp. 8-9.
[18] R. Doc. 13, pp. 9-10.  On July 11, 2018, Plaintiff received a second call from Phares for a copy of the SOS commission, which Phares had not received.  *Id.*  There is no indication in the record whether the SOS commission was ever sent to Phares.
[19] R. Doc. 13, pp. 10-11.
[20] R. Doc. 13, pp. 10-11.
[21] R. Doc. 13, p. 12.

reported on the news.[22]  Plaintiff asserts multiple possible grounds for Ardoin's motivation to do this, including to deflect the fact that Ardoin announced his own candidacy for re-election right before the qualifying period ended (despite Ardoin's earlier statements to the contrary); and/or to preclude Plaintiff from running against the incumbent, Ralph Abraham, as Phares hoped to receive a gubernatorial staff position if Abraham ultimately became governor; and/or because Defendants were trying to sabotage his political career.[23]

    While at the East Baton Rouge Parish jail ("EBRPJ"), Plaintiff repeatedly asked to see the arrest warrants to no avail.  Plaintiff alleges that his attorney told him that a Nineteenth Judicial District judge called Phares to retrieve Plaintiff over the weekend, but Phares said "No, I am not going to go get him until Monday."   Plaintiff's bond was set on Saturday, which was paid, but Plaintiff was held in the EBRPJ until Monday, when Plaintiff was picked up and taken to the East Feliciana Parish jail on the second warrant.  Plaintiff bonded out from there as well.[24]  Plaintiff's SOS commission was confiscated by Phares.[25]

    After his release, Plaintiff says he made several attempts to obtain the warrants from the courts and the LSP (since Cox was the affiant), to no avail.[26]  Cox sent Plaintiff an email, advising Plaintiff to submit a public records request to obtain a copy of the warrants.[27]  Plaintiff saw a picture of the warrant signed by Nineteenth Judicial District Court Judge Fred Crifasi while

---

[22] R. Doc. 13, pp. 12, 14 and *see* the online news articles at R. Docs. 13-10, pp. 1-19 and 13-11.  Plaintiff passed out while in the police car and was taken to the hospital.  R. Doc. 13, at p. 13.
[23] R. Doc. 13, pp. 12-14, 18.
[24] R. Doc. 13, pp. 13-14 and *see* R. Doc. 13-12, pp. 3-5 (bond receipts).
[25] R. Doc. 13, p. 21.
[26] R. Doc. 13, pp. 14-16, 19.  Plaintiff also attempted to obtain the warrants from the East Feliciana district attorney's office and 19th Judicial District Court Judge Fred Crifasi, who issued the warrant. *Id.*  While Plaintiff questioned how anyone at the SOS would know to arrest him, Plaintiff also stated that one of the news articles of his arrest quoted an SOS spokeswoman, who stated that one of the election compliance officers heard Plaintiff's name and "it rang a bell that he had been told by the state police that they were looking for this guy." R. Doc. 13, pp. 13, 18-19 and R. Doc. 13-11, pp. 2-3.
[27] R. Doc. 13, pp. 14-15.

watching the evening news, and read that the warrant stated that Cox could find no record that Plaintiff is a commissioned police officer.[28] Plaintiff watched another news broadcast during which Phares was interviewed, and Phares stated that, while Plaintiff had an SOS commission card, it was meaningless in East Feliciana Parish. Phares also stated that he contacted "Mr. Wood" at the SOS and told Wood that commissions like Plaintiff's are subject to misuse, and the SOS should consult with other law enforcement agencies regarding the documentation required to issue such cards.[29]

In late September 2018, LBC member Bill Owens emailed Cox to find out why Cox was not interviewing other members of the LBC during his investigation of Plaintiff. Cox responded that he was conducting a criminal investigation of Plaintiff but waiting on information from other agencies, including the Louisiana Governor's Office of Homeland Security and the Louisiana Department of Revenue, which Plaintiff interprets as meaning that Cox was on a "witch hunt" because he could not prove any charges against Plaintiff.[30] Plaintiff contends that Cox also told Owens that the LBC is not recognized by the State. Plaintiff alleges that Cox and Landry's statements that the LBC lacks recognition are an "attempt[] to injure public records by distorting the Tribal Recognition because of [Cox's] investigation of me from the untrue allegations of Greg Phares that I was not vote[d] chief of Police" of the LBC.[31]

Plaintiff ultimately qualified to run in the election but contends that the negative press regarding his arrest overshadowed his campaign. Plaintiff also provides an affidavit from Reginald

---

[28] R. Doc. 13, p. 16 and *see* R. Doc. 13-6. Plaintiff seems to have eventually obtained information regarding the warrants. The affidavit and warrant from the 20th Judicial District Court are attached to the First Amended Complaint at R. Doc. 13-12, pp. 1-2 and screenshots of the 19th Judicial District Court warrant are at R. Doc. 13-6, pp. 1-3. Plaintiff also attached these documents to his memorandum opposing Cox's Motion to Dismiss at R. Docs. 114-2 and 114-4.
[29] R. Doc. 13, p. 17 and R. Doc. 13-7.
[30] R. Doc. 13, p. 15 and R. Doc. 13-5.
[31] R. Doc. 13, p. 22.

Roberts, an NAACP representative that Plaintiff hired to assist with his campaign. Roberts alleges he was told by Travis that Travis did not want Roberts to "to campaign for [Plaintiff] or to put out signs for [Plaintiff's] campaign in East Feliciana Parish."[32]

Plaintiff's primary claim is that the five defendants conspired to pursue criminal prosecution of Plaintiff "as having committed a crime in having been appointed Chief of Police of the Louisiana Band of Choctaw Indians, Inc., because of my Native American heritage and/or because I ran for congress and/or because of my lawful pursuit of recognition of my aboriginal rights and my status as Native American."[33] Plaintiff alleges that he has suffered damage to his credibility, and has been forced to pay for bonds, and has had his SOS commission and his membership in the LBC questioned, which has affected his character and reputation publicly and in the LBC.[34]

In connection with these claims, Plaintiff asserts causes of action against all defendants under 42 U.S.C. § 1983 for violations of his rights under the Eighth and Fourteenth Amendments, as well as for unlawful conspiracy under 42 U.S.C. § 1985(2) and § 1985(3).[35] Plaintiff also seeks to have all defendants enjoined from colluding to interfere with his political campaigns in November 2018 and in the future; and for monetary damages, punitive damages pursuant to 42 U.S.C. § 1983, and attorney's fees pursuant to 42 U.S.C. § 1988.[36]

---

[32] R. Doc. 13, pp. 17-18, 22 and *see* R. Docs. 13-8, 13-9, and 13-13 (Roberts' affidavit).
[33] R. Doc. 13, pp. 22-23.
[34] R. Doc. 13, p. 23.
[35] R. Doc. 13, pp. 26-28 (Third through Sixth Claims for Relief).
[36] R. Doc. 13, p. 26 (Second Claim for Relief).

## II.   LAW AND ANALYSIS

### A.  The First Amended Complaint Is a Deficient, Shotgun Pleading

Although it was counseled, Plaintiff's First Amended Complaint suffers from several pleading deficiencies and fails to meet the pleading standards established by Rules 8 and 10 of the Federal Rules of Civil Procedure, tasking both defendants and the Court to sort through an amalgamation of potential claims "interwoven in a haphazard fashion."[37] Rule 8 states that a complaint "must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[38] Additionally, under Rule 10, "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."[39] "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often critically referred to as 'shotgun pleadings.'"[40]

In *Garig v. Travis*, this Court relied on *Weiland v. Palm Beach Cnty. Sheriff's Office*, an Eleventh Circuit case, in identifying several types of "shotgun pleadings"—imprecise complaints that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," including "a complaint that…is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action… and [a complaint] asserting multiple claims against multiple defendants without

---

[37] *Garig v. Travis*, No. 20-654, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021) (deGravelles, J.), citing *James v. City of Plaquemine, Louisiana,* No. 18-858, 2019 WL 4452834, at *2 (M.D. La. Sept. 17, 2019) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)). *Garig* also involved shotgun pleading of § 1983 claims against Landry, Travis, and Phares by the same attorney who was representing Plaintiff in this suit.
[38] *Garig,* 2021 WL 2708910, at *17, citing Fed. R. Civ. P. 8(a)(2).
[39] *Id.* at *17, citing Fed. R. Civ. P. 10(b).
[40] *Id.,* citing *Weiland*, 792 F.3d at 1320.

specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."[41]  As noted in *Garig*, "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief."[42]

Plaintiff's First Amended Complaint is replete with conclusory, vague, and immaterial facts, and blatant conjectures, not obviously connected to any particular cause of action.[43] The First Amended Complaint also fails to delineate which of Plaintiff's alleged facts support each of his claims for relief, so that as to some claims, it is unclear which claim is being asserted against which defendant.[44] In sum, Plaintiff's Complaint presents the precise problems the Eleventh Circuit identified as being characteristic of shotgun pleadings, and "is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure."[45] By failing to provide corresponding factual support for each separate cause of action, failing to specify what defendant took what action, and failing to differentiate between the state and federal claims, the First Amended Complaint violates the letter and spirit of Rules 8 and 10.  While the First Amended Complaint could be dismissed on this ground alone, this Report will address the substantive arguments for dismissal raised in the Motions.[46]

---

[41] *Id.*, citing *Weiland*, 792 F.3d at 1321–23 (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

[42] *Weiland*, 792 F.3d at 1325 (emphasis in original, citation and quotations omitted).

[43] *See, e.g.,* R. Doc. 13, p. 14, ¶ 33 (recitation of phone calls to Plaintiff regarding Phares' potential motives), p. 15, ¶ 37 (training on Miranda rights), pp. 15-16, ¶¶ 41-46 (rhetorical questions regarding Plaintiff's arrest), pp. 19-22, ¶¶ 64-66 (recounting meeting with the U.S. Attorney's office and the Federal Bureau of Investigation).

[44] *See, e.g.*, R. Doc. 13, pp. 26-28 (the Third through Sixth Claims for Relief do not identify the specific defendants against whom relief is sought).

[45] *Garig,* 2021 WL 2708910 at *19, citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (citation omitted).

[46] *Garig,* 2021 WL 2708910 at *19.

**B. The Sheriff Defendants Are Entitled to Qualified Immunity for Plaintiff's §
1983 Individual Capacity Claims and/or Those Claims` Should be Dismissed
for Failure to State a Claim**

**1. Legal Standard for Fed. R. Civ. P. 12(b)(6) Dismissal for Failure to State a
Claim and Qualified Immunity**

*Fed. R. Civ. P. 12(b)(6)*

In *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*,[47] the United States Supreme Court
addressed the standard of pleading that a plaintiff must meet to survive a motion to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a
right to relief above the speculative level."[48] "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
face.'"[49] "A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[50]
It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader
is entitled to relief.'"[51] "Where a Complaint pleads facts that are 'merely consistent with' a
defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement
to relief.'"[52] On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the
Court "must accept as true all of the factual allegations contained in the Complaint."[53] While
factual assertions are presumed to be true, "labels and conclusions" or "a formulaic recitation of

---

[47] *Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (2009).
[48] *Twombly,* 550 U.S. at 555.
[49] *Iqbal,* 556 U.S. at 678, quoting *Twombly,* 550 U.S. at 570.
[50] *Iqbal,* 556 U.S. at 678.
[51] *Id.* at 679.
[52] *Id.* at 678 (internal quotation marks omitted).
[53] *Erickson*, 551 U.S. at 94.

the elements of a cause of action" alone are not enough to withstand a Fed. R. Civ. P.12(b)(6) motion.[54]

*Qualified Immunity*

Phares and Travis contend that they are entitled to qualified immunity, shielding them from Plaintiff's § 1983 individual capacity claims for violations of the Eighth and Fourteenth Amendments.[55] The qualified immunity defense, which operates to protect public officials who are performing discretionary tasks if their actions were objectively reasonable in light of clearly established law, requires a two-step analysis.[56] Taking the facts as alleged in the light most favorable to the plaintiff(s), the Court considers whether a defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.[57] The two elements may be analyzed in either order.[58] "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[59] The plaintiff is required to prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[60]

"To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[61] "The clearly established standard does not mean that officials' conduct is protected

---

[54] *Iqbal*, 556 U.S. at 678.

[55] R. Doc. 74-1, pp. 15-17.

[56] *Huff v. Crites*, 473 Fed.Appx. 398 (5th Cir. 2012).

[57] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001)—that called for consideration of the two-pronged analysis in a particular order—should not be "regarded as an inflexible requirement").

[58] *Pearson*, 555 U.S. at 236.

[59] *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012), citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

[60] *Iqbal*, 556 U.S. at 676.

[61] *Cantrell,* 666 F.3d at 919, citing *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

by qualified immunity unless the very action in question has previously been held unlawful."[62] Indeed, "[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations."[63] "[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract."[64] "Officials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful."[65]

### 2. Plaintiff's § 1983 Claims Fail to State a Constitutional Violation and Should be Dismissed

*Sheriff Defendants' Arguments*

Plaintiff's generalized allegations against "Defendants" in his Sixth Claim for Relief purport to identify Eighth and Fourteenth Amendment violations, *i.e.*, Plaintiff was falsely arrested; defendants failed to train and supervise sheriff's deputy officials; defendants promulgated policies that caused defamation as Plaintiff was walked in front of the media in handcuffs; defendants were deliberately indifferent to Plaintiff's medical needs following the arrest; defendants retaliated by leaving Plaintiff in custody longer than necessary; and defendants retaliated against Plaintiff and/or his staff in connection with his campaign.[66] However, the Sheriff Defendants argue that Plaintiff's Eighth Amendment claims fail because Plaintiff was not convicted at the time of the Motion, and therefore, the Eighth Amendment, which applies to convicted criminals, does not apply.[67]    The Sheriff Defendants further contend that Plaintiff's

---

[62] *Cantrell,* 666 F.3d at 919, citing *Wernecke v. Garcia,* 591 F.3d 386, 393 (5th Cir. 2009).
[63] *Cantrell,* 666 F.3d at 919, citing *Brown v. Miller,* 519 F.3d 231, 236-37 (5th Cir. 2008).
[64] *Cantrell,* 666 F.3d at 919, citing *Kinney,* 367 F.3d at 350.
[65] *Cantrell,* 666 F.3d at 919, citing *Wernecke,* 591 F.3d at 393.
[66] R. Doc. 13, p. 28.
[67] R. Doc. 74-1, p. 17.

deliberate indifference claim fails because Plaintiff must allege that "prison officials acted or failed to act with deliberate indifference to [a risk of serious harm]," but Plaintiff has not alleged any facts to show that the Sheriff Defendants were involved with Plaintiff's medical care after his arrest, including during his brief time in jail.[68]

Next, Phares and Travis argue that Plaintiff cannot state a false arrest claim under the Fourteenth Amendment because it does not apply; rather, the Fourth Amendment applies.[69] However, even considering Plaintiff's claim under the Fourth Amendment, these defendants contend that an arrest made pursuant to a valid warrant is a valid arrest, and that "if an independent intermediary, such as a justice of the peace, authorizes an arrest, then the initiating party cannot be liable for false arrest," even if the initiating party is malicious.[70] Phares and Travis argue that they are not liable because Plaintiff's arrest was made pursuant to valid arrest warrants signed by judges. While these defendants acknowledge that there is an exception to the independent intermediary doctrine under *Franks v. Delaware*,[71] they claim the exception requires a showing that "the deliberations of the intermediary were in some way tainted by the actions of the defendant," and "requires more than bare assertions of falsehood. Instead, they 'must be accompanied by an offer of proof ... [and] point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.'"[72] The Sheriff Defendants contend that Plaintiff has not shown that the exception to the independent intermediary doctrine applies because he has not offered any proof that the affidavits were tainted. Furthermore, these defendants argue that, since they did not present or sign the affidavits, *Franks* liability can

---

[68] R. Doc. 74-1, p. 18, citing *Gobert v. Caldwell,* 463 F.3d 339, 345 (5th Cir. 2006).
[69] R. Doc. 74-1, p. 19, citing *Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 814 (5th Cir. 2010).
[70] R. Doc. 74-1, p. 20, citing *Shaw v. Villanueva,* 918 F.3d 414, 417 (5th Cir. 2019).
[71] *Franks v. Delaware,* 438 U.S. 154, 171 (1978).
[72] R. Doc. 74-1, pp. 20-21, citing *Terwilliger v. Reyna,* 4 F.4th 270, 283 (5th Cir. 2021) (citing *Franks,* 438 U.S. at 171).

only attach if they provided material false or misleading information for use in the affidavits.[73] Plaintiff has not alleged that Travis was involved with the preparation of the warrant affidavits at all, or that Phares provided any specific false or misleading information in connection with the affidavits.[74] At most, Cox's affidavit references the same phone calls between Phares and Plaintiff that Plaintiff also refers to in the First Amended Complaint.[75] Additionally, the Sheriff Defendants contend that, although they did not carry out the actual arrest of Plaintiff, as sheriff's department officials, they are also entitled to qualified immunity in connection with Plaintiff's arrest because it was made pursuant to a valid, judicially-issued warrant.[76]

Next, the Sheriff Defendants argue that Plaintiff's official capacity claim that the defendants failed to train and supervise sheriff's deputy officials and for the promulgation of policies that caused defamation both fail for lack of a constitutional violation, as discussed *below,* and Plaintiff's complaint of being escorted out of the SOS building in front of the media in handcuffs fails because Plaintiff has not alleged that either Phares or Travis was personally involved in escorting Plaintiff.[77] The Sheriff Defendants also contend that Plaintiff's claim of retaliation for being held in custody longer than necessary also fails because, as to Travis, Plaintiff has not alleged any personal involvement with his detention, and, as to Phares, to prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.[78] The Sheriff Defendants argue that Plaintiff has not asserted that they

---

[73] *Terwilliger,* 4 F.4th at 281-82.
[74] R. Doc. 74-1, pp. 21-22, citing *Terwilliger,* 4 F.4th at 283.
[75] R. Doc. 74-1, p. 22 and *compare* R. Doc. 13-12, p. 1 *with* R. Doc. 13, pp. 9-10.
[76] R. Doc. 74-1, p. 22, citing *Shine v. Jones,* 743 Fed. Appx. 566, 568 (5th Cir. 2018) ("Sheriffs are entitled to qualified immunity for conducting an arrest pursuant to a warrant issued by a proper authority")(citations omitted).
[77] R. Doc. 74-1, pp. 23.
[78] R. Doc. 74-1, p. 24, citing *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006) (citations omitted).

retaliated against him for exercising a right, but rather, alleges that the retaliation itself was the violation of a constitutional right. These defendants additionally argue that Plaintiff has not alleged a constitutional violation based on his allegation that he was detained in the EBRPJ for two days after posting bond on Saturday while awaiting extradition to the jail in East Feliciana Parish due to Phares' refusal to send deputies to retrieve Plaintiff before the Monday after his arrest.[79] The Sheriff Defendants contend that Plaintiff's detention over this two day period was in accordance with La. Code Crim. P. art. 207, which requires a person awaiting transfer to be transferred within ten days.[80]

The Sheriff Defendants interpret Plaintiff's final allegation in the Sixth Claim for Relief— that "Defendants 'allowed retaliation against Plaintiff's campaign support staff by threatening not to [allow him to] campaign in East Feliciana after his arrest,"— as related to the conversation between Reginald Roberts of the NAACP and Travis, wherein Travis allegedly told Roberts that Travis did not want Roberts to campaign or to erect signs for Plaintiff.[81] Plaintiff does not assert any specific facts against Phares in connection with this claim. As to Travis, the Sheriff Defendants again contend that Plaintiff has not alleged he was retaliated against *because* he exercised his rights; rather, Plaintiff alleges that the retaliation was the violation of a right. Further, the Sheriff Defendants argue that Travis' conversation with Roberts does not allege a constitutional violation because "[t]he Constitution protects only the right to run for office in the sense of getting

---

[79] R. Doc. 13, p. 13.
[80] R. Doc. 74-1, pp. 25-26 and *see* La. Code Crim. P. 207 ("When an arrest under a warrant occurs in a parish other than that in which the alleged offense was committed, the person arrested shall be booked and imprisoned in the parish where he was arrested until he gives bail or is transferred to the parish where the offense is alleged to have been committed. A person awaiting transfer shall not be detained in custody in the parish of his arrest for a longer period than ten days.").
[81] R. Doc. 74-1, pp. 26-27, R. Doc. 13, p. 18 and R. Doc. 13-13.

on the ballot; there is no constitutional right to run for office without public criticism of a candidate's qualifications for the office he seeks,"[82] and Plaintiff was placed on the ballot.

*Plaintiff's Opposition*

Plaintiff contends that the Eighth Amendment's prohibition on excessive bail, excessive fines, and/or cruel and unusual punishment applies to Plaintiff's claims of malicious investigation, wrongful arrest in front of the media, deprivation of liberty without due process during his two day detention in jail, and posting of two bonds.[83] Plaintiff also newly asserts an unlawful conditions of confinement claim based on his two day detention in jail and Phares' refusal to send deputies to transport Plaintiff to the East Feliciana jail until the Monday after his arrest.[84]

In support of his false arrest claim under the Eighth, Fourteenth, and Fourth Amendments, Plaintiff generally argues that probable cause did not exist for Plaintiff's 2018 arrest on the charge of false personation of a police officer. This is because Phares and Travis investigated Plaintiff on this same charge in 2016, but probable cause did not exist for his arrest at that time. According to Plaintiff, these defendants knew the 2018 charges were false based on the 2016 investigation and because they were aware of Plaintiff's SOS commission, which they allegedly obtained a copy of in 2016, and because they were aware of Plaintiff's status as LBC Chief of Police and thus they could not have reasonably believed their arrest of Plaintiff was lawful.[85] While Plaintiff also alleges that "Defendants…fabricated inculpatory evidence and intentionally withheld and misrepresented exculpatory facts that they knew would have vitiated probable cause" against

---

[82] R. Doc. 74-1, p. 27, citing *Edwards v. Reynaud*, 463 F.Supp. 1235, 1239 (E.D. La. 1979).
[83] R. Doc. 85, p. 20, citing *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019), *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) and *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983).
[84] R. Doc. 85, p. 21.
[85] R. Doc. 85, pp. 2-3, 5-6, 10, 15-16, 17-19, 21. Confusingly, Plaintiff refers to a third investigation of Plaintiff for false personation (*id.* at p. 16) but it is unclear if there was a third investigation, and that allegation was not pleaded in Plaintiff's First Amended Complaint.

Plaintiff, Plaintiff does not identify facts supporting this allegation in connection with the warrant affidavit; rather, this contention is related to Plaintiff's newly-raised claim that he was denied a fair trial.[86]  Plaintiff also challenges the veracity of Cox's affidavit in support of the warrant, arguing that a copy of Plaintiff's SOS commission card "would have [been] given" to Phares as part of the 2016 investigation and Phares was thus aware of it at the time of Cox's warrant affidavit; Plaintiff's counsel faxed a copy of Plaintiff's SOS commission to Phares' counsel; and Phares was aware of the warrant and could have called Plaintiff to re-request a copy of it but no one notified Plaintiff, all of which was a "purposeful omission of a request of information to allow an affidavit of arrest to be issued without probable cause."[87]

In relation to Plaintiff's claim of interference with his campaign, Plaintiff re-avers that Travis told/threatened Roberts to not campaign for Plaintiff in East Feliciana Parish,[88] and that Phares told Plaintiff "we'll see" after Plaintiff confirmed that he was running in the 2018 election.[89] Plaintiff also newly asserts that Travis' conversation with Roberts, and Plaintiff's 2018 arrest, are violations of Plaintiff's First Amendment right to run for political office and right of "freedom of association."[90]

*Sheriff Defendants' Reply*

The Sheriff Defendants contend that Plaintiff's attempts to raise new claims for the first time in his opposition is improper, specifically pointing to the opposition's reference to a claim for Travis' alleged failure to intervene to prevent malicious prosecution against Plaintiff, a claim which these defendants argue also does not state a valid cause of action because there is no

---

[86] R. Docs. 85, pp. 6-4.
[87] R. Doc. 85, p. 22.
[88] R. Doc. 85, pp. 13, 16.
[89] R. Doc. 85, p. 18, 23.
[90] R. Doc. 85, p. 18, 23.

freestanding constitutional right to be free from malicious prosecution under § 1983.[91] Similarly, Phares and Travis contend that the First Amended Complaint does not assert that Plaintiff was deprived of a fair trial due to Defendants' tampering of witnesses and/or evidence and these allegations should be disregarded.[92]  These defendants next argue that Plaintiff failed to address dismissal of several claims as raised in the Motion, and thus has abandoned these claims: *to-wit*, Fourteenth Amendment indifference to a serious medical need; defamation, as it relates to Plaintiff's claim that he was walked in front of the media after his arrest; retaliation by leaving Plaintiff in custody for longer than necessary (although Plaintiff did address this allegation in the context of an Eighth Amendment claim); and Plaintiff's deficient, shotgun First Amended Complaint.[93]

The Sheriff Defendants re-aver that Plaintiff has failed to state an Eighth Amendment violation arising out of Plaintiff's arrest, post-arrest detention, or payment of bonds because the Eighth Amendment does not apply to these claims, particularly because Plaintiff was not a convicted prisoner during the alleged events, and because Plaintiff's authority is inapplicable. Furthermore, Plaintiff has not alleged that Travis had any personal involvement with Plaintiff's transport to the East Feliciana Parish jail or that either Phares or Travis had involvement with the setting of Plaintiff's bonds and has not shown that a reasonable official would have known that their actions were in violation of clearly established rights.[94]

---

[91] R. Doc. 103, p. 3, citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) ("[W]e conclude that no such freestanding constitutional right to be free from malicious prosecution exists.") (overruled *in part*, as noted *below*).
[92] R. Doc. 103, pp. 1-2.
[93] R. Doc. 103, pp. 2-3, citing *Davis v. Louisiana State Univ. & A&M Coll.,* No. 18-614, 2019 WL 179580, at *3 and n. 41 (M.D. La. Jan. 11, 2019) ("The failure to address Defendants' prescription argument as to these claims results in the abandonment of the claims.") (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim) (other citations omitted).
[94] R. Doc. 103, pp. 7-10, distinguishing *Bell*, 441 U.S. 520, and *City of Revere*, 463 U.S. 239.

The Sheriff Defendants assert that Plaintiff has no cause of action for false arrest under the Fourteenth Amendment as it is currently pleaded in the First Amended Complaint. Rather, the claim arises under the Fourth Amendment, but Plaintiff has not alleged sufficient facts to defeat the independent intermediary doctrine, specifically to show that Phares or Travis provided false information in the preparation of Cox's affidavit. Cox's affidavit only references Phares' phone call to Plaintiff asking Plaintiff for a copy of his SOS commission, which Plaintiff acknowledges and admits that he did not personally send to Phares.[95] This statement does not show that Phares misled Cox.[96] Defendants argue that the Court can take judicial notice under Fed. R. Civ. P. 12(d) of the September 19, 2016 Office of State Police Report attached to Plaintiff's opposition memorandum, which report does not support Plaintiff's false arrest claim or that Phares was aware that Plaintiff had an SOS commission in 2016.[97] However, even if Phares did know about Plaintiff's SOS commission in 2016, that does not mean that Plaintiff also had a commission in 2018. The Sheriff Defendants also urge the Court to take judicial notice of the transcript of Plaintiff's criminal trial attached to their reply brief,[98] where the Twentieth Judicial District Court specifically held that, despite Plaintiff's repeated reliance on his SOS commission as the purported basis for the lack of probable cause for his arrest, possession of an SOS commission does not make one a law enforcement officer. The state trial court also held that the LBC could not bestow law enforcement authority on Plaintiff outside of tribal lands, and the Clinton DMV was not on tribal

---

[95] R. Doc. 114-2, R. Doc. 114-3, and R. Doc. 13, pp. 9-10. Plaintiff alleges that he sent a copy to his attorneys to send to counsel for the Sheriff's Department.

[96] R. Doc. 103, pp. 4-5, citing R. Doc. 85, p. 19.

[97] R. Doc. 103, p. 5, citing R. Doc. 85-16 and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

[98] R. Doc. 103, pp. 6-7 citing *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.,* 920 F. 3d 890, 900 (5th Cir. 2019) and *Martin v. Roy,* No. 20-339, 2022 WL 894599, *9 (M.D. La. March 25, 2022) (taking judicial notice of criminal trial transcript) (other citations omitted).

lands. The state court thus found that Plaintiff's claims of being a commissioned law enforcement officer at the Clinton DMV was false personation in violation of La. R.S. 14:112.[99] Notably, Sheriff Defendants contend that, while the Louisiana Supreme Court overturned Plaintiff's conviction, it did not reverse the above holdings; rather, the Louisiana Supreme Court only held that the evidence did not show that Plaintiff had the intent to obtain a "special advantage" while assisting his daughter at the DMV, as required by La. R.S. 14:112.[100]

Sheriff Defendants allege that Plaintiff's First Amendment freedom of association claims are newly raised and should not be considered. Furthermore, Plaintiff's campaign interference claim under the First Amendment fails because Plaintiff was not prevented from running for office, and Plaintiff has not alleged facts to show that Travis actually restricted Plaintiff from campaigning; rather, when Travis spoke with Roberts, Travis only expressed that Travis did not want Roberts to campaign for Plaintiff. Further, Phares' comment of "We'll see"/"we shall see" in response to Plaintiff's confirmation of his intent to run for office does not support a violation of the First Amendment.[101]

*Analysis*

Like the First Amended Complaint, Plaintiff's opposition memorandum is scattershot and rambling, containing a number of new allegations, many of which are not pertinent to this case;

---

[99] R. Doc. 103-1, pp. 3-5. The affidavits allege violations of La. R.S. 14:112.1, false personation of a peace officer, which is similar to La. R.S. 14:112. R. Docs. 114-2, 114-3. The state court also noted that Plaintiff's deputy commissions issued under prior sheriffs were invalid once those sheriffs were no longer in office.

[100] R. Doc. 103, pp. 6-7, citing R. Doc. 67-2 (Louisiana Supreme Court judgment). La. R.S. 14:112 provides: "A. False personation is the performance of any of the following acts with the intent to injure or defraud, or to obtain or secure any special privilege or advantage: (1) Impersonating any public officer, or private individual having special authority by law to perform an act affecting the rights or interests of another, or the assuming, without authority, of any uniform or badge by which such officer or person is lawfully distinguished; or (2) Performing any act purporting to be official in such assumed character."

[101] R. Doc. 103, pp. 10-12.

many documents that were not attached to the First Amended Complaint;[102] and several newly asserted claims that will not be considered because they were raised for the first time in opposition. This specifically includes Travis' failure to intervene in the malicious prosecution of Plaintiff (which also fails to state a cause of action under § 1983);[103] a conditions of confinement claim arising out of Plaintiff's detention in jail over the weekend; deprivation of a fair trial during Plaintiff's criminal proceedings, including witness and evidence tampering; and violation of the First Amendment right to freedom of association.[104]

Because Plaintiff did not address dismissal of the following claims, he has waived them: Fourteenth Amendment deliberate indifference to Plaintiff's medical needs after his arrest (in which Sheriff Defendants were not alleged to have any personal involvement); defamation, as it relates to Plaintiff's claim that he was escorted out of the SOS building in front of the media after his arrest (same); and retaliation by leaving Plaintiff in custody for longer than necessary (but *see* Eighth Amendment discussion just *below*); therefore, these claims should be dismissed.

Sheriff Defendants are correct that Plaintiff has not stated a claim under the Eighth Amendment. During the time in question in the First Amended Complaint, Plaintiff was an arrestee who bonded out after a weekend in jail, not a convicted prisoner. The Eighth Amendment does not apply to the circumstances of an arrestee, nor does it apply to Plaintiff's detention at the

---

[102] *Davis v. Louisiana State Univ. & A&M Coll.,* No. 18-614, 2019 WL 179580, at *5 (M.D. La. Jan. 11, 2019) ("Plaintiff attaches an exhibit to his opposition as evidence; however, Plaintiff is advised that on a Rule 12(b)(6) motion, the Court cannot look outside the pleadings"). However, the Court may take judicial notice of certain matters outside of the pleadings when ruling on a motion to dismiss. *Tellabs, Inc.,* 551 U.S. at 322.

[103] *Castellano,* 352 F.3d at 942 ("[W]e conclude that no such freestanding constitutional right to be free from malicious prosecution exists."). As noted by the Fifth Circuit in *Guerra v. Castillo,* 82 F.4th 278, 288-89 (5th Cir. 2023), while the Supreme Court's *Thompson v. Clark,* 596 U.S. 36 (2022) decision now presupposes a Fourth Amendment claim for malicious prosecution, "…Fifth Circuit case law between 2003 (*Castellano*) and 2021 (*Anokwuru*) explicitly denied the possibility of a constitutional malicious prosecution claim." *Castellano* was still applicable precedent during the incidents complained of in Plaintiff's First Amended Complaint, *i.e.*, his 2018 arrest and detention.

[104] *Sartin v. EKF Diagnostics, Inc.,* No. CV 16-1816, 2016 WL 3598297 (E.D. La. July 05, 2016) ("… '[a]n opposition to a motion to dismiss is not the place for a party to raise new factual allegations or assert new claims.'").

Secretary of State's office,[105] or to Plaintiff's posting of bonds.[106] Therefore, all of Plaintiff's

Eighth Amendment claims should be dismissed.  Plaintiff did not specifically assert a Fourth

Amendment claim arising out of his weekend detention in jail; however, even if Plaintiff had, he

has not alleged facts to show that either Travis or Phares had any involvement with the timing of

the setting of Plaintiff's bonds. More importantly, there was probable cause for Plaintiff's arrest,

which was made after an investigation and pursuant to judicially approved warrants, as discussed

below.[107]

　　　　Plaintiff's claim of false arrest under the Eighth and Fourteenth Amendments fails to state

a cause of action because, as Sheriff Defendants point out, this claim arises under the Fourth

Amendment.[108]  Plaintiff did not assert Fourth Amendment false arrest in his First Amended

Complaint; however, even if Plaintiff had specifically alleged a Fourth Amendment claim, it still

fails. As Plaintiff acknowledges, Plaintiff's arrest was based on two warrants supported by

---

[105] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) ("Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, *see Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).").

[106] Plaintiff's authority in support of his Eighth Amendment claims is inapplicable. *Timbs,* 139 S. Ct. at 686, involved forfeiture of property belonging to a convicted criminal in satisfaction of his sentence and did not involve the payment of bonds.  In *Bell*, 441 U.S. at 535, the Supreme Court considered the constitutionality of conditions or restrictions of pretrial detention under the Fourteenth Amendment, not the Eighth, but even so, Plaintiff has not alleged any facts regarding unconstitutional conditions of confinement during his weekend stay in jail. *City of Revere,* 463 U.S. 239, expressly acknowledged that the Eighth Amendment has no applicability before an adjudication of guilt.  ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 671–672, n. 40, 97 S.Ct. 1401, 1412–1413, n. 40, 51 L.Ed.2d 711 (1977); *see Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 99 S.Ct. 1861, 1872, n. 16, 60 L.Ed.2d 447 (1979). Because there had been no formal adjudication of guilt against Kivlin at the time he required medical care, the Eighth Amendment has no application.").  To the extent it considered a government agency's responsibility to provide and pay for medical care to a detainee injured during an arrest under the Fourteenth Amendment, here again, Plaintiff has not alleged he was denied medical care during his arrest.  Rather, Plaintiff admits that the arresting deputies took him to the hospital after he passed out in the patrol car. R. Doc. 13, p. 13.

[107] Plaintiff's allegation that Phares allegedly stated that he would not retrieve Plaintiff until the following Monday is not, standing alone, a Fourth Amendment violation. R. Doc. 13, p. 13.

[108] *Cuadra,* 626 F.3d at 814 ("…plaintiff's claims based on prosecution without probable cause were best analyzed under the Fourth Amendment").

affidavits executed by Cox, after he investigated.  Significantly, the warrants were judicially approved upon a finding of probable cause,[109] and thus the independent intermediary doctrine shields these defendants,[110] who did not execute the affidavits, unless Plaintiff can show that Travis or Phares provided false or misleading information in connection with the preparation of the affidavits.  Plaintiff has not stated that Travis had any involvement with Cox's affidavits.  The affidavits mention that Phares had a phone conversation with Plaintiff and requested a copy of Plaintiff's SOS commission, and the copy was not received as of the time of the affidavit.[111] Plaintiff admits this conversation took place, and that he gave the copy of his SOS commission to his attorneys and not directly to Phares.[112]  Because Plaintiff does not state whether his attorneys actually sent a copy of the SOS commission to Phares, Cox's affidavit statements are not shown to be false.  Plaintiff also argues that the warrants lacked probable cause because the affidavits state that no commission was found for Plaintiff, even though Phares and Travis allegedly knew of Plaintiff's SOS commission in 2016;[113] however, as these defendants point out, even if they knew Plaintiff had an SOS commission and/or knew that Plaintiff was LBC Chief of Police in 2016, it does not automatically follow that those circumstances would be the same in 2018 such that it would be proper to assume knowledge of Plaintiff's status in 2018.  Phares had no duty to advise Plaintiff of the existence of the warrant or to re-request a copy of his SOS commission, but notably, Plaintiff alleges in the First Amended Complaint that Phares did request verification of

---

[109] R. Docs. 114-2, 114-3.

[110] *Shaw,* 918 F.3d at 417. The fact that Plaintiff's arrest was made pursuant to a judicially approved warrant finding probable cause distinguishes Plaintiff's arrest from those in *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) (reversing summary judgment finding probable cause for arrest), cited by Plaintiff, because the arrests in *Mesa* were not made pursuant to warrants, such that the independent intermediary doctrine was not applicable.  *Id.* at 268 and R. Doc. 85, pp. 17-19.

[111] R. Docs. 114-2, 114-3.

[112] R. Doc. 13, pp. 9-10.

[113] Plaintiff's Opposition improperly raises a multitude of new facts in connection with the 2016 investigation that were not alleged in the First Amended Complaint.

the commission a second time.[114]  More importantly, and as the state court found, the SOS commission that Plaintiff had did not vest him with law enforcement authority, which comports with the result of Cox's investigation that there was no record of Plaintiff being a commissioned law enforcement officer with authority outside of tribal lands.[115]  As such, Plaintiff has not shown that the warrant lacked probable cause, or that an exception to the independent intermediary doctrine applies, and therefore, the false arrest claim should be dismissed.

Plaintiff did not explicitly refer to the First Amendment in his claim for interference with his right to run for political office, but even considering the related facts, the claim still fails. Plaintiff admits that he was permitted to qualify to run, his name was placed on the ballot for the November 2018 election, and he engaged in campaigning activities.[116]  Travis' conversation with Roberts during which Travis allegedly stated: "…that he did not [] want [Roberts] to campaign for Mr. Burkette or to put out signs for Mr. Burkette's campaign in East Feliciana Parish," and "told [Roberts] that [Roberts] should 'stay away' from Mr. Burkette," and Phares' statement to Plaintiff that "we will see about" Plaintiff's campaign, did not preclude Plaintiff from running in the election.[117] While the First Amended Complaint refers to retaliation against Plaintiff's "**campaign support staff** by threatening not to campaign in East Feliciana," the First Amended Complaint contains no allegations that anyone in Plaintiff's support staff was retaliated against, and therefore this claim fails to state a cause of action.[118]

---

[114] R. Doc. 13, p. 10.
[115] R. Doc. 103-3. The Court takes judicial notice of the transcript of Plaintiff's criminal trial. *Martin,* 2022 WL 894599, *9.
[116] R. Doc. 13, p. 18, 22 ("I have continued to campaign hard to win the election…."); R. Doc. 13-8 (SOS letter confirming receipt of Plaintiff's qualification papers and his ballot number); and R. Doc. 13-9 (contract for Roberts' services to Plaintiff's campaign), and *see Edwards,* 463 F.Supp. at 1239.
[117] R. Doc. 13, pp. 9, 18 and R. Doc. 13-13 (Roberts' affidavit).
[118] R. Doc. 13, p. 28 (emphasis supplied).

To the extent that the First Amended Complaint could be construed as asserting First Amendment retaliation against Plaintiff arising out of Travis's alleged directive or threat to Roberts to not campaign for Plaintiff, it also fails. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation for the exercise of that right."[119] However, "[n]ot every action in response to an individual's exercise of [his] First Amendment rights rises to the level of an actionable harm."[120] To state a claim for First Amendment retaliation that does not involve "an employment or other contractual relationship between the plaintiff[ ] and ... government officials," a plaintiff must show that: (1) he was engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.[121] A retaliation claim "requires some showing that the plaintiff['s] exercise of free speech has been curtailed."[122] Even where some retaliatory conduct has the effect of chilling a plaintiff's speech, such actions can be "too trivial or minor to be actionable as a violation of the First Amendment."[123] Here, Plaintiff has not shown an injury that would chill a person of ordinary firmness from campaigning. It is not clear that Travis' statement was a threat to Plaintiff because it was made to Roberts, not Plaintiff.[124] Even if Travis' alleged statement could be construed as a threat, "this court has long held that 'mere threatening language

---

[119] *Eaker v. City of Moss Point, Mississippi,* No. 20-92-, 2021 WL 771756, at *7 (S.D. Miss. Feb. 26, 2021), citing *Warner v. St. Bernard Par. Sch. Bd.*, 99 F. Supp. 2d 748, 750 (E.D. La. 2000) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968)).

[120] *Eaker,* 2021 WL 771756, at *7, citing *Colson v. Grohman*, 174 F.3d 498, 510 (5th Cir. 1999).

[121] *Eaker,* 2021 WL 771756, at *7, citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

[122] *Eaker,* 2021 WL 771756, at *7, citing *Keenan,* 290 F.3d at 259.

[123] *Eaker,* 2021 WL 771756, at *7, citing *Keenan,* 290 F.3d at 258.

[124] *Gibson v. Jean-Baptiste,* 802 Fed.Appx. 858, 859 (5th Cir. 2020) (considering an alleged death threat made by the defendant officer on Facebook about the prisoner plaintiff, "…it is not at all clear that the Facebook comments were actually a threat. As the district court found, the comments were not addressed to Gibson; Gibson learned of them after the fact and indirectly.")

and gestures of a custodial office[r] do not, even if true' establish Section 1983 liability."[125] "Accordingly, we have consistently rejected threat-based retaliation claims."[126] Furthermore, Plaintiff stated that, despite Travis' statement, Plaintiff continued to campaign;[127] thus Plaintiff has not shown an injury or that his constitutionally protected activity was chilled. Therefore, any alleged First Amendment claim for violation of Plaintiff's right to run for political office and for retaliation against either him, or his campaign staff, should be dismissed.

### C. Plaintiff Has Failed to State a Claim for Conspiracy Under § 1985, Which Claim Should be Dismissed

Section 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section."[128] Subsection 3 prohibits private conspiracies to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law. "Like § 1985(3), the second part of § 1985(2) is directed at conspiracies to deprive equal protection; the equal protection language in § 1985(2) is paralleled in § 1985(3)."[129]

---

[125] *Gibson,* 802 Fed.Appx. at 859, citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983."). *See also Eaker,* 2021 WL 771756 at *8 (on the defendant mayor's alleged retaliatory actions of limiting the plaintiff from visiting her husband at the firehouse, harassing her husband, and making defamatory statements about her on social media because she requested budget records from the City, holding: "Plaintiff alleges that King has acted in a myriad of ways amounting to verbal abuse or intimidation. While such actions may be unprofessional or inappropriate, they do not rise to the level of an actionable constitutional injury under § 1983), citing *Gibson*, *McFadden*, and *Bender*.

[126] *Gibson,* 802 Fed.Appx. at 859, citing *Smith v. Hebert*, 533 F. Appx. 479, 483 (5th Cir. 2013); *Hudson v. Univ. of Tex. Med. Branch*, 441 Fed.Appx. 291, 292–93 (5th Cir. 2011); *Bell v. Woods*, 382 Fed.Appx. 391, 393 (5th Cir. 2010); *Brown v. Craven*, 106 Fed.Appx. 257, 259 (5th Cir. 2004).

[127] R. Doc. 13, p. 22 ("I have continued to campaign hard to win the election…"). It is unclear whether Plaintiff and/or Roberts ceased putting up signs. *Compare* the prior quote and Plaintiff's additional statement at R. Doc. 13, p. 18 ("I told Reggie it's my Constitutional right to run for Congress and the Sheriff has no right to tell you not to campaign for me and certainly has no right to tell him not to put my campaign signs out.") with the later allegation in the First Amended Complaint at R. Doc. 13, p. 23 that "Mr. Burkette continues to campaign hard to win the election but every day but is not allowed to put up signs in East Feliciana").

[128] *Montoya v. FedEx Ground Package Sys., Inc.,* 614 F.3d 145, 149 (5th Cir. 2010).

[129] *Daigle v. Gulf State Utilities Co., Loc. Union No. 2286,* 794 F.2d 974, 978-79 (5th Cir. 1986).

*Sheriff Defendants' Arguments*

Sheriff Defendants contend that Plaintiff cannot establish the elements of a conspiracy claim under § 1985(2) or § 1985(3). Under 1985(3), Plaintiff is required to show: (1) a conspiracy, (2) for the purpose of depriving someone equal protection of the laws, (3) an act in furtherance of the conspiracy, (4) injury to a person or deprivation of any right of a citizen of the United States, and (5) the action of the conspirators is motivated by a racial animus.[130] Further, when a claim is asserted under the equal protection portion of § 1985(2), the class-based animus requirement of § 1985(3) applies, and therefore Plaintiff must allege that the conspirators were motivated by his race. "Importantly, the plaintiff must allege facts that suggest an agreement among the alleged co-conspirators."[131]

Sheriff Defendants argue that Plaintiff has alleged no facts to show a conspiracy; rather, he relies on conclusory allegations based on speculation, as evidenced by his statement to an FBI investigator that, while he believes all the defendants and others were in a conspiracy, he has no knowledge of how they were all involved in one.[132] Next, Plaintiff relies on the assertion that some of the defendants have worked together, and have been photographed together in the past, to support his contention that the only way that the SOS employees would have known about the arrest warrants was due to a conspiracy. However, this is conjecture, lacking in factual support for the claim that Travis, Phares (and others) conspired to unlawfully arrest Plaintiff at the SOS building. Sheriff Defendants further assert that Plaintiff has alleged no facts to show racially motivated behavior by either of them in furtherance of an alleged conspiracy. While Plaintiff

---

[130] *See Marceaux v. Lafayette City-Parish Consolidated Government,* No. 12-1532, 921 F. Supp. 2d 605, 642 (W.D. La. Jan. 30, 2013) and *Daigle,* 794 F.2d at 978 (noting § 1985(3)'s requirement that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.").
[131] R. Doc. 74-1, pp. 28-29, citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 389 (5th Cir. 2017).
[132] *See* R. Doc. 13, p. 20.

mentions his Native American status, he does not definitely allege that he was arrested, or treated differently, because of his race.[133]

*Plaintiff's Opposition*

In support of his conspiracy claim, Plaintiff generally argues that "Defendants" have "invented" crimes after unspecified "acts of collusion;" that Plaintiff was precluded from campaigning in East Feliciana Parish also as a result of generalized "collusion;" and that Plaintiff's arrest was part of a generalized "conspiracy," "set in motion through collusion of several agencies."[134]   On this last claim, Plaintiff alleges that Phares, through the East Feliciana Parish Sheriff's Office, investigated Plaintiff in 2016 and was aware of Plaintiff's SOS commission, but renewed his efforts to find a reason to arrest Plaintiff once Plaintiff decided to campaign, "and then involved the additional state actors at the Secretary of State and Attorney General."[135] Plaintiff alleges that Travis, Phares, and "other Defendants" acted to coerce witnesses Taylor and Stephen Quidd to write statements that deprived Plaintiff of his Fourth, Fourteenth, and (newly-alleged) Fifth Amendment rights, and in particular, the right to a fair trial.[136]

*Analysis*

Plaintiff's conspiracy claims under both § 1985(3) and § 1983(2) fail because Plaintiff has not shown a violation of any of his constitutional rights, a necessary element of conspiracy, facts supporting the existence of a conspiracy among defendants, or that Travis and/or Phares were motivated by race.  As discussed above, Plaintiff's arrest was made pursuant to warrants supported

---

[133] R. Doc. 74-1, pp. 30 and *see* R. Doc. 103, pp. 12-13.
[134] R. Doc. 85, pp. 4-5.
[135] R. Doc. 12, p. 12.
[136] R. Doc. 85, pp. 8-9. Quidd is alleged to have spoken with Plaintiff when Plaintiff visited a Baton Rouge DMV to lodge a complaint against Taylor. R. Doc. 13, pp. 9-10.

by probable cause, there is no actionable constitutional claim for malicious prosecution, and Plaintiff was permitted to run in the election.

Next, Plaintiff has only set forth generalized, conclusory allegations of a conspiracy, unsupported by any facts. At most, Plaintiff offers his speculation of a conspiracy; however, the evidence attached to the First Amended Complaint, including the warrant affidavits, as well as the transcript of Plaintiff's criminal trial, contradict Plaintiff's claim of a conspiracy. Rather, the evidence shows that Cox's investigation of Plaintiff arose from Taylor's complaint that Plaintiff had a firearm and stated he was a commissioned police officer while at the Clinton DMV, which resulted in the issuance of warrants that led to Plaintiff's arrest while at the SOS building.[137]

Finally, Plaintiff has failed to allege any acts of conspiracy, or statements taken in furtherance thereof, by and between any of the defendants to deprive Plaintiff of his rights *because* he is Native American.  While Travis allegedly made a statement that he did not believe that Plaintiff is Native American, Plaintiff makes no allegation that Travis conspired with anyone to harm Plaintiff because of his race.

Notably, the First Amended Complaint acknowledges that Plaintiff has no evidence of a conspiracy, as he admits that his claims are based on "links" between the defendants that he searched for, not facts: "Now how [Defendants, and others] were all involved is one of the biggest missing pieces of the face of the puzzle I said….I searched for links of how did anyone know to arrest me if there was no warrant(s)….").[138] Further, while Plaintiff relies on allegations that some

---

[137] *See* Plaintiff's opposition memorandum at R. Doc. 114, pp. 6, 8 and the warrants at R. Docs. 114-2 and 114-3.  *See also* the First Amended Complaint, R. Doc. 13, pp. 18-19 ("…one of the articles by National News reports Meg Casper Sunstrom the spokeswoman for the Louisiana Secretary of State said one of the election compliance officers heard Burkette's name "and it rang a bell that he had been told by the state police that they were looking for this guy.'"). The unverified exhibits attached to Plaintiff's opposition memorandum on this issue are not attached to the First Amended Complaint and are, therefore, not considered.
[138] R. Doc. 13, p. 20.

of the defendants have worked together, or have been photographed together in the past, Plaintiff admits that he does not know the relationship, if any, between Cox and Phares.[139] Plaintiff has not alleged any agreement between the defendants to conspire against him to deprive him of his constitutional rights because of his race. For these reasons, Plaintiff's § 1985 conspiracy claims fail to state a cause of action and should be dismissed.

### D. Plaintiff's § 1983 Official Capacity Claims Fail to State a Claim and Should be Dismissed

*Sheriff Defendants' Arguments*

The First Amended Complaint alleges claims against the defendants in their individual and official capacities. Sheriff Defendants interpret the official capacity claims to arise out of Plaintiff's failure to train claim, which is specifically against Travis and generally asserted in the Sixth Claim for Relief,[140] and Plaintiff's claim that defendants "promulgated policies that caused that caused the defamation of the Plaintiff by being walked in front of news media cameras in handcuff from his qualification of a U.S. Congressional race."[141]

A suit against a government official in his official capacity is the same as a suit against the government entity of which he is an agent.[142] Sheriff Defendants argue, "The official's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." A municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons with whom the police come into contact." Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." In order for liability to attach based on a claim for failure to train, the plaintiff "must allege with specificity

---

[139] *See* R. Doc. 85, p. 15 ("The extent of the relationship of Mr. Phares and Mr. Cox is unknown at this time as there has been no discovery on this matter….").
[140] *See* R. Doc. 13, pp. 2, 28.
[141] R. Doc. 74-1, p. 31, citing R. Doc. 13, p. 28.
[142] R. Doc. 74-1, p. 31, citing *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999).

how a particular training program is defective."[143] A municipal official may be liable for failure to supervise or train if: the supervisor either failed to supervise or train the subordinate official; a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and, the failure to train or supervise amounts to deliberate indifference.[144] To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."[145]

Sheriff Defendants argue that Plaintiff has not alleged any facts in support of a failure to train claim; has not shown an underlying violation of any of his constitutional rights by Phares or any other East Feliciana Parish deputy; has not alleged how any training programs by Travis were defective or that Travis was deliberately indifferent in adopting a training policy; and has not alleged any patterns of constitutional violations by Phares.[146]

Regarding Plaintiff's claim that unspecified defendants promulgated policies that caused defamation when Plaintiff was escorted out of the SOS building, Sheriff Defendants argue that municipal liability under Section 1983 requires proof of three elements: an official policy or custom, of which a policymaker can be charged with actual or constructive knowledge, and a violation of constitutional rights whose "moving force" is the policy or custom.[147] In order for a municipality to be held liable under Section 1983, the plaintiff must identify an unconstitutional municipal policy or custom that caused his injury.[148] "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[149] Sheriff Defendants

---

[143] R. Doc. 74-1, p. 33, citing *Connick v. Thompson*, 131 S. Ct. 1350, 1359-60 (2011), *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989), and *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).
[144] R. Doc. 85, p. 34, citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).
[145] *Goodman*, 571 F.3d at 395.
[146] R. Doc. 74-1, p. 34.
[147] R. Doc. 74-1, p. 31, citing *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009).
[148] R. Doc. 74-1, p. 31, citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, (1978).
[149] R. Doc. 74-1, p. 31, citing *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993).

31

argue that Plaintiff has failed to allege any specific policy or custom that was a moving force behind any violation, and in particular, has failed to allege any constitutional violation by East Feliciana Parish deputies because Plaintiff was arrested by East Baton Rouge Parish sheriff's deputies.[150] Lastly, Sheriff Defendants argue that these claims fail against Phares because municipal liability applies to policymakers, which is the sheriff as the chief law enforcement officer of the parish, not his deputies.[151]

*Plaintiff's Opposition*

Plaintiff argues that he has asserted a § 1983 failure to train claim against Travis for failure to adequately train Phares, in that Phares "acted with impunity in an environment in which [he] was not adequately supervised…."  Plaintiff further alleges that this defective training of Phares resulted in Phares and/or Travis "caus[ing] the individual Defendant Officers to deprive [Plaintiff] of his clearly established constitutional rights…."[152] Plaintiff also alleges he has asserted a § 1983 *Monell* claim against "Against Defendant State of Louisiana…which employed all individual Defendants in 2018."[153]

*Sheriff Defendants' Reply*

Sheriff Defendants reply that Plaintiff has alleged no facts regarding any defective training by Travis over Phares, or any link between defective training and a constitutional violation. These defendants argue that, besides themselves, Plaintiff has not named any other "individual Defendant Officers" so any allegation that they supervised others who violated Plaintiff's rights fails to state a claim.  Sheriff Defendants also point out that Plaintiff did not address their argument

---

[150] R. Doc. 74-1, pp. 34-35.
[151] R. Doc. 74-1, p. 35.
[152] R. Doc. 85, p. 9. Plaintiff's Opposition to this Motion also references a failure to train claim against Landry for not adequately training Cox, which is not alleged in the First Amended Complaint. *Id.*
[153] R. Doc. 85, p. 10.

that they cannot be liable for the promulgation of policies causing defamation related to Plaintiff's arrest because they did not arrest Plaintiff.[154]

*Analysis*

Plaintiff's official capacity claims for failure to train and for promulgation of defamatory policies fail on several grounds. First, because Phares is not a policymaker, he cannot be liable for any defamation-causing policies. Travis is likewise not liable for any policies causing defamation arising out of the arrest because Plaintiff does not allege that Travis was involved in the arrest, nor are there any facts asserted regarding any policies Travis promulgated that caused defamation. Plaintiff's failure to train claim also fails because the First Amended Complaint does not assert any underlying constitutional violation as discussed, *above*, nor does it assert that any training by Travis that was inadequate.[155] "The description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts."[156] Therefore, Plaintiff's official capacity claims against Phares and/or Travis fail to state a cause of action and should be dismissed.

**E.  Plaintiff's Claims for Injunctive Relief Are Moot and/or Should be Dismissed**

Sheriff Defendants seek dismissal of Plaintiff's claims for restraining orders and injunctions preventing them from interfering with Plaintiff's campaign in the November 2018 election and in future campaigns.[157] As to the former, these defendants argue the election is over so the request is moot.[158] As to the request for an injunction relating to prospective conduct,

---

[154] R. Doc. 103, p. 14.

[155] As the Sheriff Defendants point out, Plaintiff's opposition memorandum attempts to assert a *Monell* claim "against the State of Louisiana," which does not apply to them because they are not employees of the State. R. Doc. 103, pp. 13-14.

[156] *Spiller v. City of Texas City, Police Dept.,* 130 F.3d 162, 167 (5th Cir. 1997).

[157] *See* R. Doc. 13, p. 24 ("That this Court order that the Sheriff Jeffery Travis and Greg Phares be restrained from interfering with the campaign efforts of Billy Burkette and that they both be preliminarily and permanently enjoined from such interference into the future.")

[158] R. Doc. 74-1, p. 38, citing *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).

Sheriff Defendants argue that Plaintiff has not stated that he plans to run for a specific office or in a particular election in the future. As such, there is no "'reasonable expectation or a 'demonstrated probability' that the same controversy will occur," which is what Plaintiff would have to show in order to obtain injunctive relief for prospective conduct.[159] Travis and Phares additionally contend that injunctive relief is not warranted because, for the reasons stated above, Plaintiff has not alleged sufficient facts to state a claim for any underlying violation of his rights and thus cannot show a necessary element for permanent injunctive relief, *i.e.*, success on the merits.[160]

In response, Plaintiff reiterates that he is entitled to injunctive relief because of his past campaigns in 2016 and 2018.[161] However, Plaintiff did not address Sheriff Defendants' argument that Plaintiff has not stated any intention to run for any future campaigns, or their argument that injunctive relief as to the November 2018 election is moot. Phares and Travis are correct that Plaintiff's claim for injunctive relief related to the November 2018 election is moot, and his claim for prospective injunctive relief should be dismissed because he has alleged no facts to show a "'reasonable expectation or a 'demonstrated probability' that the same controversy will occur."[162]

### F.  Supplemental Jurisdiction Should be Declined Over State Law Claims

To the extent Plaintiff seeks to invoke the supplemental jurisdiction of this Court over state law claims against Travis and/or Phares for failure to adequately train and/or supervise employees,

---

[159] R. Doc. 74-1, p. 38, citing *Wilson,* 667 F.3d at 597, and *see id.*  ("Regardless of our *Kucinich* analysis that the same party might not need to show he would later be subject to the same improper action, here the nature of the claim is strictly personal to Wilson. In the absence of an assertion by Wilson that he plans to run again, there is no "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur." *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).").

[160] R. Doc. 74-1, p. 39, citing *VRC LLC v. City of Dallas,* 460 F.3d 607, 611 (5th Cir. 2006) ("The party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest.") (internal citations omitted).

[161] R. Doc. 85, pp. 11-12 and *see* R. Doc. 103, p. 15.

[162] *Wilson,* 667 F.3d at 597.

for ordering that Plaintiff not campaign in the election, and defamation,[163] a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[164] Here, since dismissal is recommended over all Plaintiff's federal claims against Phares and Travis, it is also recommended that supplemental jurisdiction be declined over any state law claims against these defendants.[165]

### G. Leave to Amend Should be Denied Because Further Amendments Would be Futile, and/or Plaintiff Has Already Amended and Pleaded His Best Case

Plaintiff's opposition memorandum requests leave to amend in the event the Court finds the pleadings deficient.[166] Ordinarily, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed."[167] Granting leave to amend, however, is not required if the plaintiff has already pleaded his "best case."[168] Similarly, a district court need not grant a futile motion to amend.[169] "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted."[170]

As explained above, Plaintiff has admitted that his conspiracy claim is based solely on speculation, and the evidence attached to the First Amended Complaint, and of which the Court can take judicial notice, contradict Plaintiff's conspiracy allegations, and also contradict Plaintiff's

---

[163] R. Doc. 13, pp. 25, 28. The First Amended Complaint alleges that Phares defamed Plaintiff on the news, and that Phares confiscated Plaintiff's commission. R. Doc. 13, pp. 16, 21, 28.
[164] *Moore v. Singh,* No. 17-191, 2018 WL 4517630, at *5 (M.D. La. Aug. 30, 2018), report and recommendation approved, No. 17-191 2018 WL 4517453 (M.D. La. Sept. 20, 2018), citing 28 U.S.C. § 1367.
[165] As such, Defendants' arguments seeking dismissal of these claims are not considered. R. Doc. 85, pp. 35-37.
[166] R. Doc. 85, p. 22.
[167] *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.,* 710 Fed. Appx 625, 627 (5th Cir. 2017) citing *Brewster v. Dretke,* 587 F.3d 764, 767-68 (5th Cir. 2009) (citation omitted).
[168] *Wiggins,* 710 Fed. Appx at 627, citing *Brewster,* 587 F.3d at 768 (citation omitted).
[169] *Wiggins,* 710 Fed. Appx at 627, citing *Legate v. Livingston,* 822 F.3d 207, 211 (5th Cir. 2016)(citation omitted).
[170] *Id.*

claim of being a commissioned law enforcement officer with authority outside of tribal lands--the primary allegation he relies on in support of his § 1983 false arrest and § 1985 conspiracy claims, as well as his official capacity failure to train claim.[171] As such, further amendments appear futile as to these claims.  Similarly, the Eighth Amendment does not apply to Plaintiff's allegations, and Plaintiff's First Amendment right to run in elections was not violated because Plaintiff ran in the November 2018 election, so further amendments to these claims are also futile.  Any Fourth Amendment claim against the Sheriff Defendants fails because Plaintiff has not shown that the warrant lacked probable cause, or that an exception to the independent intermediary doctrine applies.

Finally, Plaintiff has pleaded his best case.  Plaintiff filed two counseled complaints of more than twenty pages each, asserting myriad facts.  However, even considering these scattershot pleadings liberally, Plaintiff has failed to state cognizable claims, and in particular, an underlying violation of his constitutional rights.  Notably, Plaintiff filed his counseled First Amended Complaint *after* Travis and Phares filed their first Motion to Dismiss, so Plaintiff has already availed himself of the opportunity to cure pleading deficiencies.[172] As Plaintiff has already had the opportunity to cure pleading deficiencies, further amendments to the viable claims is futile, and Plaintiff has already pleaded his best case, leave to amend should be denied.

---

[171] Plaintiff also conducted discovery during the pendency of his criminal case.  *See, e.g.,* R. Doc. 114, p. 6 (referring to the Scrantz statement he obtained 'in compliance with [a] Subpoena in the criminal matter.").

[172] *See* R. Docs. 12 and 13.  As is the Court's practice (and as currently required by Local Civil Rule 12), Travis and Phares' first Motion to Dismiss was terminated without prejudice due to Plaintiff's filing of the First Amended Complaint. R. Doc. 20.  Travis and Phares then filed a second Motion to Dismiss, which  Plaintiff opposed but which was terminated without prejudice when the case was stayed (R. Docs. 33, 42, 52).  When the case was re-opened, Sheriff Defendants re-filed the Motion that is the subject of this Report, which Plaintiff opposed.

## III.    RECOMMENDATION

Travis and Phares are entitled to qualified immunity from Plaintiff's § 1983 claims. Alternatively, Plaintiff's § 1983 individual and official capacity claims fail to state a cause of action, as do his § 1985(2) and (3) conspiracy claims. Plaintiff's claim for injunctive relief related to the November 2018 election is moot, and his request for prospective injunctive relief is not warranted because there is no indication that Plaintiff intends to run for future political office. Since all federal claims should be dismissed, supplemental jurisdiction over any state law claims should be declined. Finally, Plaintiff has pleaded his best case, and leave to amend would be futile, such that, if sought, further leave to amend should be denied. Accordingly,

**IT IS RECOMMENDED** that the Motion to Dismiss,[173] filed by Defendants Greg Phares and Jeff Travis, be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that all Plaintiff Billy Burkette's individual and official capacity claims against Travis and Phares, including for injunctive relief, be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and that further leave to amend be denied, if sought.

Signed in Baton Rouge, Louisiana, on February 23, 2024.



**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[173] R. Doc. 74.