# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**BILLY BURKETTE**                                                              **CIVIL ACTION NO.**

**VERSUS**

**EAST FELICIANA PARISH**                                           **18-996-JWD-EWD**
**SHERIFF JEFFREY TRAVIS, ET AL**.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 23, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BILLY BURKETTE**                                       **CIVIL ACTION**

**VERSUS**

                                                        **NO. 18-996-JWD-EWD**

**EAST FELICIANA PARISH**
**SHERIFF JEFFREY TRAVIS, ET AL**.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the Motion to Dismiss, filed by former Louisiana Secretary of State Kyle Ardoin ("Ardoin");[1] the Motion to Dismiss, filed by former Louisiana Attorney General Jeff Landry ("Landry");[2] and the Motion to Dismiss, filed by former Louisiana State Police Investigator William Bill Cox ("Cox"),[3] all of which are opposed by Billy Burkette ("Plaintiff"), who is now representing himself.[4] Ardoin, Landry, and Cox are entitled to Eleventh Amendment immunity shielding them from Plaintiff's official capacity claims, and the *Ex Parte Young* exception does not apply. Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims, and Plaintiff's § 1985 conspiracy claims fail to state a cause of action. As all federal claims are subject to dismissal, supplemental jurisdiction should be declined. Therefore, it is recommended[5] that the Motions be granted, dismissing Plaintiff's official capacity claims without prejudice and his remaining claims with prejudice, and without providing further leave to amend, thereby concluding this case as to Ardoin, Landry and Cox ("Defendants").

---

[1] R. Doc. 88 and *see* R. Doc. 117 (reply memorandum). In 2024, Ardoin was succeeded as Secretary of State by Nancy Landry.

[2] R. Doc. 89 and *see* R. Doc. 118 (reply memorandum). In 2024, Jeff Landry is currently Governor of Louisiana and was succeeded as Attorney General by Elizabeth Murrill.

[3] R. Doc. 94 and *see* R. Doc. 122 (reply memorandum).

[4] At the time the Motions were filed, Plaintiff was represented by counsel, who filed opposition memoranda on his behalf. R. Docs. 111, 114. Following a hearing at which Plaintiff appeared, Plaintiff's counsel was subsequently permitted to withdraw from representation. R. Docs. 154-55.

[5] The Motions were referred to the undersigned for Report and Recommendation. R. Doc. 171.

I.    BACKGROUND[6]

On November 2, 2018, Plaintiff filed his Complaint for a temporary restraining order and preliminary and permanent injunctions asserting federal constitutional and state constitutional and tort claims against Defendants Ardoin, Landry, Cox, East Feliciana Parish Sheriff Jeff Travis ("Travis"), and former Chief Deputy Greg Phares ("Phares").[7]  In response to Travis and Phares' first Motion to Dismiss,[8] Plaintiff filed his "First Amended Complaint to Supplement and Amend to Add Monetary Damages," which named the same defendants and asserted the same claims, but added claims for damages, as well as additional factual allegations.[9]

The First Amended Complaint is comprised of a lengthy "Official Statement of Facts," which provides Plaintiff's version of various events spanning several years that purportedly give rise to his claims.[10]  Plaintiff's factual allegations are presumed true for the purposes of these Motions, and only the relevant facts follow.[11] Plaintiff states that he is Native American and, at the relevant times, was the chief of police for his tribe, the Louisiana Band of Choctaw Indians ("LBC").   Plaintiff contends the LBC is recognized by the State but not by the federal government.[12]  In approximately March 2015, as part of an effort to obtain federal recognition of

---

[6] This factual background section is copied almost verbatim from the factual background section in the Report and Recommendation regarding the Motion to Dismiss, filed by Defendants Greg Phares and Jeff Travis.  R. Doc. 184. It is republished here so that both Reports are self-contained.

[7] R. Doc. 1.  Plaintiff alleges that Phares left the East Feliciana Parish Sheriff's Office, and that Cox is currently employed in Phares' former position as Chief Deputy under Travis. R. Doc. 114, p. 2.  As discussed below, Plaintiff's request for a TRO and injunctions were related to a political election that took place on November 6, 2018, in which Plaintiff was a candidate for a Congressional seat.  R. Doc. 1, p. 21.

[8] R. Doc. 12.

[9] R. Doc. 13.

[10] Although sometimes referred to by Plaintiff as an "affidavit of events," the "Official Statement of Facts" in the original and First Amended Complaints is not notarized nor made under penalty of perjury. *See* R. Doc. 1, pp. 2-23 and R. Doc. 13, pp. 3-23.  Allegations and procedural history that are not material to the Motions are not discussed.

[11] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Garig v. Travis,* No. 20-654, 2022 WL 868519, at *1 (M.D. La. Mar. 22, 2022) (deGravelles, J.), citing *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014).

[12] R. Doc. 1, p. 3, R. Doc. 13-2, and R. Doc. 13-14.  As discussed below, Plaintiff contends that an opinion issued by Landry at Plaintiff's request disagrees that the LBC is officially recognized by the State, and that Phares violated Plaintiff's "Native American Rights," presumably by stating that the commission issued to Plaintiff by the Secretary of State's Office did not confer law enforcement power in East Feliciana Parish.  *See* R. Doc. 13, ¶ 50.

the LBC,[13] Plaintiff applied for, and received, what he refers to as a "Chief of Police commission" from the Louisiana Secretary of State (the "SOS commission").[14] Plaintiff then created a tribal police badge.[15]  Plaintiff alleges that shortly after he created his badge, a Louisiana State Police ("LSP") investigator contacted him to verify his badge and commission. The investigator reviewed Plaintiff's paperwork and told Plaintiff that, because he was Native American and the LBC police chief, he was "exempt from having to be POST certified and from joining the Louisiana Enforcement Council" and was cleared to obtain a badge.[16]

During the flooding that took place in 2016 in East Baton Rouge Parish and surrounding areas, Plaintiff assisted Travis and Phares with obtaining supplies to assist in the relief effort, including a boat from Cabela's.[17]  A few months later, Phares notified Plaintiff that he was being investigated for obtaining the boat ("the 2016 investigation"), which had been invoiced to the East Feliciana Parish Sheriff's Office.  After meeting with Travis, Plaintiff went to Cabela's and paid for the boat.[18]

In May 2018, Plaintiff wrote to Landry's office requesting an opinion regarding the LBC's claimed inherent rights to hunt, fish, trap and gather on their lands and their eligibility for, or exemption from, receiving licenses to do so.[19]  Plaintiff contends that Landry's opinion, which is not in the record, failed to recognize the LBC's rights to hunt, fish, and trap on their land and erroneously stated that the LBC is not officially recognized by the State.[20]

---

[13] Plaintiff alleges that federal recognition under "U.S.C. Title 25" requires a tribal law enforcement department. R. Doc. 13, p. 3.
[14] Plaintiff claims to have received the SOS commission after providing the Secretary of State with a notarized letter in November 2014 indicating that he had been elected police chief by the LBC.  R. Doc. 13, p. 3 and R Doc. 13-2.
[15] R. Doc. 13, pp. 3-4 and R. Docs. 13-3 and 13-4.
[16] R. Doc. 13, pp. 4-5.
[17] R. Doc. 13, pp. 5-6.
[18] R Doc. 13, pp. 6-7.
[19] R. Doc. 13, p. 5 and R. Doc. 13-15, which appears to be part of Plaintiff's request for the opinion. It is unclear from the First Amended Complaint whether the LBC sought licenses, or exemptions from licensing requirements.
[20] R. Doc. 13, p. 22.

In early July 2018, Plaintiff visited the Department of Motor Vehicles in Clinton, Louisiana while armed to assist his daughter in obtaining a driver's license. Plaintiff engaged in an exchange with DMV employee "Marie Taylor," who questioned Plaintiff's possession of a firearm in a state building. Plaintiff stated that he had the authority to carry the firearm and showed Taylor his SOS commission.[21] Several days later, Phares contacted Plaintiff, and asked Plaintiff if he was still running in the 2018 Congressional election. When Plaintiff confirmed his expected candidacy, Phares replied: "We will see about that." Phares then told Plaintiff that Taylor had filed an official complaint against him for carrying his firearm in the DMV, and because the commission "looked funny." Phares would not provide Plaintiff a copy of Taylor's complaint, but requested a copy of Plaintiff's SOS commission, which Plaintiff contends he gave to his attorneys to send to Phares.[22]

On July 20, 2018, Plaintiff visited the SOS office to qualify as a candidate in the November 6, 2018 election for a Congressional seat.[23] Plaintiff completed his paperwork, talked to reporters and then exited the building. As Plaintiff prepared to enter his vehicle to depart, two deputies of the East Baton Rouge Parish Sheriff's Office asked if he would accompany them back inside the building, to which Plaintiff agreed. Once inside, the deputies advised him that they had two warrants for his arrest for impersonating a police officer. Plaintiff was arrested and his requests to see the warrants were denied.[24] Plaintiff requested not to be handcuffed until outside the building since he was running for U.S. Congress. He says the deputies originally agreed to escort Plaintiff out the side door of the building; however, as they were approaching that door, an SOS representative stated that "Secretary Kyle Ardoin said to make him walk out the front doors so the

---

[21] R. Doc. 13, pp. 8-9.
[22] R. Doc. 13, pp. 9-10. On July 11, 2018, Plaintiff received a second call from Phares for a copy of the SOS commission, which Phares stated he had not received. *Id.* There is no indication in the record whether the SOS commission was ever sent to Phares.
[23] R. Doc. 13, pp. 10-11.
[24] R. Doc. 13, pp. 10-11.

news people can see him being arrested."[25]  Plaintiff was escorted out the front door where thirty to forty people were assembled, including news media with cameras, and his arrest was widely reported on the news.[26]  Plaintiff asserts multiple possible grounds for Ardoin's motivation to do this, including to deflect the fact that Ardoin announced his own candidacy for re-election right before the qualifying period ended (despite Ardoin's earlier statements to the contrary); and/or to preclude Plaintiff from running against the incumbent, Ralph Abraham, as Phares hoped to receive a gubernatorial staff position if Abraham ultimately became governor; and/or because Defendants were trying to sabotage his political career.[27]

While at the East Baton Rouge Parish jail ("EBRPJ"), Plaintiff repeatedly asked to see the arrest warrants to no avail.  Plaintiff alleges that his attorney told him that a Nineteenth Judicial District ("19th JDC") judge called Phares to retrieve Plaintiff over the weekend, but Phares said "No, I am not going to go get him until Monday."  Plaintiff's bond was set on Saturday, which was paid, but Plaintiff was held in the EBRPJ until Monday, when Plaintiff was picked up and taken to the East Feliciana Parish jail on the second warrant. Plaintiff bonded out from there as well.[28]  Plaintiff's SOS commission was confiscated by Phares.[29]

After his release, Plaintiff says he made several attempts to obtain the warrants from the courts and the LSP (since Cox was the affiant), to no avail.[30]  Cox sent Plaintiff an email, advising

---

[25] R. Doc. 13, p. 12.
[26] R. Doc. 13, pp. 12, 14 and *see* the online news articles at R. Docs. 13-10, pp. 1-19 and 13-11.  Plaintiff passed out while in the police car and was taken to the hospital. R. Doc. 13*,* p. 13.
[27] R. Doc. 13, pp. 12-14, 18.
[28] R. Doc. 13, pp. 13-14 and *see* R. Doc. 13-12, pp. 3-5 (bond receipts).
[29] R. Doc. 13, p. 21.
[30] R. Doc. 13, pp. 14-16, 19.  Plaintiff also attempted to obtain the warrants from the East Feliciana district attorney's office and 19th Judicial District Court Judge Fred Crifasi, who issued the warrant.  *Id.*  While Plaintiff questioned how anyone at the SOS would know to arrest him, Plaintiff also stated that one of the news articles of his arrest quoted an SOS spokeswoman, who stated that one of the election compliance officers heard Plaintiff's name and "it rang a bell that he had been told by the state police that they were looking for this guy." R. Doc. 13, pp. 13, 18-19 and R. Doc. 13-11, pp. 2-3.

Plaintiff to submit a public records request to obtain a copy of the warrants.[31]  Plaintiff saw a picture of the warrant signed by Nineteenth Judicial District Court Judge Fred Crifasi while watching the evening news, and read that the warrant stated that Cox could find no record that Plaintiff is a commissioned police officer.[32] Plaintiff watched another news broadcast during which Phares was interviewed, and Phares stated that, while Plaintiff had an SOS commission card, it was meaningless in East Feliciana Parish. Phares also stated that he contacted "Mr. Wood" at the SOS and told Wood that commissions like Plaintiff's are subject to misuse, and the SOS should consult with other law enforcement agencies regarding the documentation required to issue such cards.[33]

In late September 2018, LBC member Bill Owens emailed Cox to find out why Cox was not interviewing other members of the LBC during his investigation of Plaintiff.  Cox responded that he was conducting a criminal investigation of Plaintiff but waiting on information from other agencies, including the Louisiana Governor's Office of Homeland Security and the Louisiana Department of Revenue, which Plaintiff interprets as meaning that Cox was on a "witch hunt" because he could not prove any charges against Plaintiff.[34] Plaintiff contends that Cox also told Owens that the LBC is not recognized by the State. Plaintiff alleges that Cox and Landry's statements that the LBC lacks state recognition are an "attempt[] to injure public records by distorting the Tribal Recognition because of [Cox's] investigation of me from the untrue allegations of Greg Phares that I was not vote[d] chief of Police" of the LBC. [35]

---

[31] R. Doc. 13, pp. 14-15.
[32] R. Doc. 13, p. 16 and *see* R. Doc. 13-6.  Plaintiff seems to have eventually obtained information regarding the warrants. The affidavit and warrant from the 20th Judicial District are attached to the First Amended Complaint at R. Doc. 13-12, pp. 1-2 and screenshots of the 19th Judicial District warrant are at R. Doc. 13-6, pp. 1-3.  Plaintiff also attached these documents to his memorandum opposing Cox's Motion to Dismiss at R. Docs. 114-2 and 114-4.
[33] R. Doc. 13, p. 17 and R. Doc. 13-7.
[34] R. Doc. 13, p. 15 and R. Doc. 13-5.
[35] R. Doc. 13, p. 22.

Plaintiff ultimately qualified to run in the election but contends that the negative press regarding his arrest overshadowed his campaign. Plaintiff also provides an affidavit from Reginald Roberts, an NAACP representative that Plaintiff hired to assist with his campaign. Roberts alleges he was told by Travis that Travis did not want Roberts "to campaign for [Plaintiff] or to put out signs for [Plaintiff's] campaign in East Feliciana Parish."[36]

Plaintiff's primary claim is that the five defendants conspired to pursue criminal prosecution of Plaintiff "as having committed a crime in having been appointed Chief of Police of the Louisiana Band of Choctaw Indians, Inc., because of my Native American heritage and/or because I ran for congress and/or because of my lawful pursuit of recognition of my aboriginal rights and my status as Native American."[37] Plaintiff alleges that he has suffered damage to his credibility, has been forced to pay for bonds, and has had his SOS commission and his membership in the LBC questioned, which has affected his character and reputation publicly and in the LBC.[38]

In connection with these claims, Plaintiff asserts causes of action against all Defendants under 42 U.S.C. § 1983 for violations of his rights under the Eighth and Fourteenth Amendments, as well as for unlawful conspiracy under 42 U.S.C. § 1985(2) and § 1985(3).[39] Plaintiff also seeks to have all Defendants enjoined from colluding to interfere with his political campaigns in November 2018 and in the future; for Plaintiff's SOS commission to "be acknowledged and recognized;" and for monetary damages, punitive damages pursuant to 42 U.S.C. § 1983, and attorney's fees pursuant to 42 U.S.C. § 1988.[40]

---

[36] R. Doc. 13, pp. 17-18, 22 and *see* R. Docs. 13-8, 13-9, and 13-13 (Roberts' affidavit).
[37] R. Doc. 13, pp. 22-23.
[38] R. Doc. 13, p. 23.
[39] R. Doc. 13, pp. 26-28 (Third through Sixth Claims for Relief).
[40] R. Doc. 13, p. 26 (Second Claim for Relief).

## II.    LAW AND ANALYSIS

### A.  The First Amended Complaint Is a Deficient, Shotgun Pleading

Although it was counseled, Plaintiff's First Amended Complaint suffers from several deficiencies and fails to meet the pleading standards established by Rules 8 and 10 of the Federal Rules of Civil Procedure, taxing both Defendants and the Court to sort through an amalgamation of potential claims "interwoven in a haphazard fashion."[41] Rule 8 states that a complaint "must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[42]  Additionally, under Rule 10, "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."[43] "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often critically referred to as 'shotgun pleadings.'"[44]

In *Garig v. Travis*, this Court relied on *Weiland v. Palm Beach Cnty. Sheriff's Office*, an Eleventh Circuit case, in identifying several types of "shotgun pleadings"—imprecise complaints that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," including "a complaint that…is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action… and [a complaint] asserting multiple claims against multiple defendants without

---

[41] *Garig v. Travis*, No. 20-654, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021) (deGravelles, J.), citing *James v. City of Plaquemine, Louisiana,* No. 18-858, 2019 WL 4452834, at *2 (M.D. La. Sept. 17, 2019) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)).  *Garig* also involved shotgun pleading of § 1983 claims against Landry, Travis, and Phares by the same attorney who was representing Plaintiff in this suit.
[42] *Garig,* 2021 WL 2708910 at *17, citing Fed. R. Civ. P. 8(a)(2).
[43] *Id.* at *17, citing Fed. R. Civ. P. 10(b).
[44] *Id.*, citing *Weiland*, 792 F.3d at 1320.

specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."[45] As noted in *Garig*, "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief."[46]

Plaintiff's First Amended Complaint is replete with conclusory, vague, and immaterial facts, and blatant conjectures, not obviously connected to any particular cause of action.[47] The First Amended Complaint also fails to delineate which of Plaintiff's alleged facts support each of his claims for relief, so that as to some claims, it is unclear which claim is being asserted against which defendant.[48] In sum, Plaintiff's First Amended Complaint presents the precise problems identified by the Eleventh Circuit as characteristic of shotgun pleadings, and "is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure."[49] By failing to provide corresponding factual support for each separate cause of action, failing to specify which defendant took what action, and failing to differentiate between the state and federal claims, the First Amended Complaint violates the letter and spirit of Rules 8 and 10. While the First Amended Complaint could be dismissed on this ground alone, this Report will address the substantive arguments for dismissal raised in the Motions.[50]

---

[45] *Id.*, citing *Weiland*, 792 F.3d at 1321–23 (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

[46] *Weiland*, 792 F.3d at 1325 (emphasis in original, citation and quotations omitted).

[47] *See, e.g.,* R. Doc. 13, p. 14, ¶ 33 (recitation of phone calls to Plaintiff regarding Phares' potential motives), p. 15, ¶ 37 (training on Miranda rights), pp. 15-16, ¶¶ 41-46 (rhetorical questions regarding Plaintiff's arrest), pp. 19-22, ¶¶ 64-66 (recounting meeting with the U.S. Attorney's office and the Federal Bureau of Investigation).

[48] *See, e.g.*, R. Doc. 13, pp. 26-28 (the Third through Sixth Claims for Relief do not identify the specific Defendants against whom relief is sought).

[49] *Garig,* 2021 WL 2708910 at *19, citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (citation omitted).

[50] *Garig,* 2021 WL 2708910 at *19.

## B. Defendants Are Entitled to Eleventh Amendment Immunity for All Claims Against Them in Their Official Capacities

*Defendants' Arguments*

Plaintiff's First Amended Complaint expressly names Ardoin and Cox "in both his individual capacity and in his official capacity," and alleges La. C.C. art. 2317 *respondeat superior* claims against "State of Louisiana Through R. Kyle Ardoin" and "State of Louisiana Through Bill Cox and Individually."[51] While the First Amended Complaint does not expressly name Landry in both capacities, it does allege La. C.C. art. 2317 *respondeat superior* claims against "State of Louisiana Through Jeff Landry," and therefore it appears Plaintiff intended to sue Landry in both capacities.[52] Ardoin, Landry, and Cox seek dismissal of all Plaintiff's official capacity claims for monetary damages, including Plaintiff's federal and state law claims, arguing that those claims are barred by Eleventh Amendment sovereign immunity, which they have not waived.[53]

Ardoin, Landry, and Cox also contend that Plaintiff's claims for injunctive relief against them in their official capacities fail on several grounds, *to wit*: Plaintiff's claim for an injunction arising out of the November 2018 election is now moot; and Plaintiff's claim for a prospective injunction for future elections is not ripe and does not meet the *Ex Parte Young* exception to Eleventh Amendment immunity because Plaintiff has not asserted an ongoing violation of federal law. Plaintiff has not alleged that he is currently running for an elected office and these Defendants have not prevented Plaintiff from running in an election.[54]

---

[51] R. Doc. 13, pp. 2, 25-26.

[52] R. Doc. 13, p. 25 *but see* p. 2, "Party Defendant….Defendant, Jeff Landry, is the head of the Louisiana Office of the Attorney General who has the duty to investigate the collusion of the public bodies of the State of Louisiana."

[53] R. Doc. 88-1, pp. 3-4, R. Doc. 89-1, pp. 3-4, and R. Doc. 94-1, pp. 4-5, citing *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974), *Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997) and *Holliday v. Bd. of Sup'rs of LSU Agri. & Mechanical College*, 2014-CC-0585 (La. 2014), 149 So.3d 227, 229.

[54] R. Doc. 88-1, pp. 4-5, 16-19, citing *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012); R. Doc. 89-1, pp. 15-18, citing *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (other citation omitted) and R. Doc. 93-1, pp. 20-22, citing *Wilson v. Birnberg*, 667 F.3d 591 (5th Cir. 2012) ("Generally, a

Ardoin also contends that Plaintiff's request for a declaration validating his SOS commission is moot because, to the extent Plaintiff seeks the declaration to exonerate him from being charged and criminally convicted of impersonating a peace officer, which actions were allegedly taken to impede his election campaign, the criminal conviction has been overturned and the election is over.[55]  Thus, there is no criminal conviction or election giving rise to a substantial controversy of sufficient immediacy to warrant a declaratory judgment.[56] Second, there is no real dispute between Ardoin and Plaintiff as to the authenticity of Plaintiff's SOS commission. Ardoin does not dispute that his office issued the SOS commission, which merely identified that Plaintiff was an appointed official of the LBC (but did not certify that, or confer any authority on Plaintiff to act as, a peace officer under La. R.S. §14:112.1).[57]

*Plaintiff's Opposition*[58]

Plaintiff acknowledges Eleventh Amendment immunity for state officials, but argues that he is entitled to a prospective injunction under *Ex Parte Young* because he ran in the 2018 election (and in a 2016 election, newly-raised by Plaintiff).[59] Plaintiff's opposition memorandum also relies on the *Ex Parte Young* exception as supporting his request for Landry to cease withholding

---

request for an injunction is moot 'upon the happening of the event sought to be enjoined.'" *Harris v. City of Houston,* 151 F.3d 186, 189 (5th Cir. 1998)."). Landry and Cox also assert that Plaintiff cannot meet the four elements required to obtain injunctive relief. R. Doc. 89-1, pp. 17-18 and R. Doc. 94-1, pp. 23-24.  This argument is not reached because Plaintiff's requests for injunctions fail for the reasons explained below.

[55] Plaintiff admits that his conviction was overturned.  R. Doc. 111, p. 10.

[56] R. Doc. 88-1, pp. 19-21, citing *Connell v. Shoemaker,* 555 F.2d 483, 486 (5th Cir. 1977).

[57] R. Doc. 88-1, pp. 21-22. Ardoin contends that a "peace officer" for purposes of La. R.S. §14:112.1 includes "commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, [etc]. A peace officer must be certified by the Council on Peace Officer Standards and Training (POST) as having successfully completed the training and examination requirements to become a peace officer. Secretary Ardoin is not a member of the Council and does not certify or commission peace officers."  R. Doc. 88-1, p. 22.

[58] In their reply memoranda, Landry and Cox assert that Plaintiff's opposition memorandum was untimely (R. Doc. 118, p. 1-2; R. Doc. 122, pp. 1-2), and Ardoin filed a motion to strike Plaintiff's opposition memorandum as untimely. R. Doc. 116.  However, the Court denied the motion to strike, permitting the untimely filing of Plaintiff's opposition memoranda to the Ardoin and Landry Motions. R. Doc. 125.  Cox did not file a motion to strike Plaintiff's opposition memorandum. The Court exercises its discretion to consider Plaintiff's opposition memorandum to Cox's Motion as well.

[59] R. Doc. 111, pp. 10-11, R. Doc. 114, pp. 14-16, and p. 12 (newly raised allegations regarding the 2016 election).

"relevant facts out of his public opinions related to Burkette" in Plaintiff's position as chief, *i.e.*, for Landry to recognize the LBC; for Landry to declare the rights of the LBC to hunt and fish on their land; and for Landry to intervene in Plaintiff's criminal proceedings and help Plaintiff prosecute his claims for recognition of the LBC's rights. According to Plaintiff, Landry is tasked with these duties as Attorney General and pursuant to Art. 4, § 8 of the Louisiana Constitution.[60]

*Defendants' Replies*

Defendants assert that Plaintiff did not oppose their Motions regarding dismissal of Plaintiff's claims for monetary damages in their official capacities, including his *respondeat superior* claims, and Ardoin asserts that Plaintiff did not oppose dismissal of his claim for declaratory relief against Ardoin, which fails to present a justiciable controversy.[61] Defendants argue that Plaintiff has waived any opposition to dismissal of these claims because he failed to brief them.[62]

As to the arguments Plaintiff did address, Ardoin and Cox again urge the Court to find that the *Ex Parte Young* doctrine does not permit an injunction against them to prevent interference with Plaintiff's political campaigns, because Plaintiff has not been prevented from getting on a ballot in an upcoming election. Thus, Plaintiff has not shown an ongoing violation of federal law. Ardoin and Cox further argue that Plaintiff's request for injunctive relief fails to present a

---

[60] R. Doc. 111, pp. 10-11 and *see* p. 8 (reference to Art. 4, § 8) and p. 12 (reference to *Ex Parte Young*) and La. Const. Art. 4, § 8 ("Section 8. There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state….As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action."). Plaintiff's opposition memorandum to Cox's Motion also raises this argument. R. Doc. 114, p. 14.
[61] R. Doc. 117, p. 3, R. Doc. 118, pp. 3-4, and R. Doc. 122, p. 2.
[62] R. Doc. 117, p. 3, R. Doc. 118, p. 3, and R. Doc. 122, p. 2, citing *Garig*, 2021 WL 2708910, at *27 and *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018).

justiciable controversy because Plaintiff has not alleged that he is currently running for office.[63]
Landry argues that Art. 4 §8 of the Louisiana Constitution does not require him to intervene in
Plaintiff's criminal proceedings because he has not been asked to do so by either a district attorney
or the applicable court, and this Court has specifically rejected a similar argument in the past,
holding that the Louisiana Attorney General was not a proper defendant under *Ex Parte Young* on
a claim that he failed to institute a criminal prosecution.[64]   Landry similarly argues that Art. 4 §8
does not authorize or require him to declare the LBC's rights to hunt and fish on their land, and
Plaintiff has not alleged any other statutory authority requiring Landy to do so, nor has Plaintiff
asserted this claim in his First Amended Complaint.[65]   Landry alternatively alleges that even if a
state law did impose a duty on him to engage in the foregoing actions, the Eleventh Amendment
would still bar injunctive relief because a state official cannot be compelled to conform his conduct
to state law.[66]

*Analysis*

"Section 1983 provides a private right of action for damages to individuals who are
deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by
any 'person' acting under the color of state law."[67] "The Supreme Court has 'held that a State is
not a "person" against whom a § 1983 claim for money damages might be asserted.'"[68] "This rule

---

[63] R. Doc. 117, p. 4 and R. Doc. 122, pp. 4-5.
[64] R. Doc. 118, pp. 5-6, citing *White Hat v. Landry*, 475 F. Supp.3d 532, 545 (M.D. La. 2020).  As it stands, Plaintiff admits that no charges were brought in the 19th Judicial District Court.  Plaintiff's conviction in the 20th Judicial District Court was overturned by the Louisiana Supreme Court.  R. Doc. 114, p. 5.
[65] R. Doc. 118, pp. 3, 6.
[66] R. Doc. 118, p. 7, citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 91 (1984) and *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).
[67] *Garig v. Travis*, 2022 WL 868519 at *8, citing *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983).
[68] *Garig*, 2022 WL 868519 at *8, citing *Med. RX/Sys., P.L.L.C. v. Texas Dept. of State Health Servs.*, 633 Fed. Appx. 607, 610 (5th Cir. 2016) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002)).

extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'"[69]
Nevertheless, "[i]n *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an
exception to Eleventh Amendment immunity."[70] "The [*Ex Parte Young*] Court held that
enforcement of an unconstitutional law is not an official act because a state cannot confer authority
on its officers to violate the Constitution or federal law."[71] "To meet the *Ex Parte Young* exception,
a plaintiff's suit alleging a violation of federal law must be brought against individual persons in
their official capacities as agents of the state, and the relief sought must be declaratory or injunctive
in nature and prospective in effect."[72]

Defendants have not waived Eleventh Amendment immunity; accordingly, Plaintiff's
official capacity claims against Ardoin, Landry, and Cox under federal and state law[73] for monetary
damages are barred by such immunity and should be dismissed without prejudice. Plaintiff's claim
against Ardoin for a declaration recognizing his SOS commission also fails to present an actual
controversy because Ardoin does not dispute the validity of the commission, which identifies
Plaintiff as an elected/appointed official within the LBC.[74]  Moreover, Plaintiff did not oppose the

---

[69] *Garig*, 2022 WL 868519 at *8, citing *Med RX/Sys., P.L.L.C.,* 633 Fed. Appx. at 610 (other citations omitted).
[70] *Garig*, 2022 WL 868519 at *8, citing *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).
[71] *Garig*, 2022 WL 868519 at *8, citing, *Aguilar*,160 F.3d at 1054 (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993)).
[72] *Garig*, 2022 WL 868519 at *8, citing *Aguilar*,160 F.3d at 1054 (citing *Saltz v. Tenn. Dept. of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).
[73] *Murray v. LeBlanc*, 629 F.Supp.3d 437, 450 (M.D. La. 2022) (deGravelles, J.) ("Nevertheless, 'state officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception.' *Corn v. Miss. Dept. of Public Safety*, 954 F.3d 268, 275 (5th Cir.), *cert. denied*, —— U.S. ——, 141 S. Ct. 672, 208 L.Ed.2d 277 (2020) (citing *Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900) ("We cannot 'instruct[ ] state officials on how to conform their conduct to state law.')). Thus, the Eleventh Amendment bars state law claims against states and state officials in their official capacity for damages *and* for injunctive and declaratory relief. *See id.* at 274–75.").
[74] R. Doc. 88-1, p. 21, and *see Connell,* 555 F.2d at 486 ("…the question of the mootness vel non of appellants' claim under the Declaratory Judgment Act, 28 U.S.C. s 2201, becomes 'whether the facts alleged, under all the circumstances, show that there is a **substantial controversy, between parties having adverse legal interests,** of sufficient immediacy and reality to warrant the issue of a declaratory judgment.'") (emphasis added) (citations omitted). To the extent Plaintiff requests an acknowledgement to exonerate him from the criminal proceedings against him, which is not clear, Ardoin is correct that the request is now moot because Plaintiff's conviction was overturned. *Id.*

Motions seeking dismissal of his claims for monetary relief or oppose Ardoin's Motion seeking dismissal of Plaintiff's claim for declaratory relief against Ardoin. This Court has previously dismissed claims that a plaintiff has failed to meaningfully oppose on the grounds of waiver.[75] Therefore, the foregoing claims should be dismissed as barred by Eleventh Amendment immunity and waived.[76]

Plaintiff's request for an injunction against Defendants, seeking to prevent them from interfering with Plaintiff's 2018 political campaign is moot, since the election is over. Conversely, Plaintiff's request for injunctions against Defendants preventing interference with future campaigns is not ripe because Plaintiff has not stated that he intends to campaign for any specific upcoming election.[77] For these same reasons, Plaintiff's request for an injunction fails to meet the *Ex Parte Young* exception--it fails to seek prospective relief for an ongoing violation of federal law. Plaintiff's request for an injunction compelling Landry to intervene in the criminal prosecution of Plaintiff, and/or to correct the actions of Phares and Travis, is improperly raised for the first time in opposition, and is moot to the extent that the criminal proceedings have concluded. Furthermore, Plaintiff has not shown that either the district attorney or a court requested that Landry intervene in Plaintiff's criminal proceedings pursuant to Art. 4, §8 of the Louisiana Constitution, and Landry is not a proper defendant under *Ex Parte Young* on this claim because

---

[75] *See Garig,* 2021 WL 2708910 at *27 ("Consequently, because Plaintiff failed to meaningfully oppose Defendants' motions on these claims, the Court will grant Defendants' motions on those issues on the grounds of waiver. *See JMCB,* 336 F.Supp.3d at 634 (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London,* 387 F.Supp.3d 663, 672 (M.D. La. 2019) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue); *see also Wuestenhoefer,* 105 F.Supp.3d at 672 (finding that relator waived argument as to how certain write-offs fell within a particular provision of the False Claims Act).").

[76] This includes Plaintiff's claims for monetary relief at R. Doc. 13, pp. 24-25, ¶ 7(3), for a declaration by Ardoin at R. Doc. 13, p. 24, ¶ 7(1) and Plaintiff's La. CC. art. 2317 claims against the State through Ardoin and Landry at R. Doc. 13, pp. 25-26.

[77] *See Choice Inc. of Texas,* 691 F.3d at 715 ("A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical.").

his obligation as chief legal officer of the State to prosecute is too remote, and thus he had no duty

to get involved.[78] Landry is not required to issue opinions, and the opinions that he issues are not

binding, they are merely advisory.[79] Plaintiff's official capacity claims against these Defendants

for monetary relief, injunctions, and a declaratory judgment are barred by Eleventh Amendment

immunity and should be dismissed without prejudice for lack of subject matter jurisdiction.[80]

### C. Defendants Are Entitled to Qualified Immunity as to Plaintiff's § 1983 Individual Capacity Claims and/or Those Claims Should be Dismissed for Failure to State a Claim

#### 1. Legal Standard for Fed. R. Civ. P. 12(b)(6) Dismissal for Failure to State a Claim and Qualified Immunity

*Fed. R. Civ. P. 12(b)(6)*

In *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*,[81] the United States Supreme Court

addressed the standard of pleading that a plaintiff must meet to survive a motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a

right to relief above the speculative level."[82] "To survive a motion to dismiss, a complaint must

---

[78] *See White Hat,* 475 F.Supp.3d at 548 ("Further for the *Ex Parte Young* doctrine to apply, the official must have 'some connection' to the enforcement of the act at issue.") (citation omitted) and *id.* at 549 ("The Court agrees that absent some showing that the Attorney General has been asked to assist in the criminal prosecution of the Statute, or has instituted, prosecuted, or intervened for cause when authorized by a court having original jurisdiction over the criminal prosecution, the general obligation of the Attorney General as the chief legal officer of Louisiana in prosecuting cases under the statute is indirect and remote.").

[79] *Hall v. Louisiana,* No. 12-657, 2015 WL 1383532 at *4 (M.D. La. Mar. 23, 2015) ("Unlike the Louisiana Constitution or laws duly enacted by the Louisiana legislature, Opinions from the Louisiana Office of the Attorney General do not carry the force and effect of law. They are merely advisory and are limited to the facts presented by the government entities or officials requesting the opinion."). As it stands, this Court has already reached the issue of Plaintiff's request for a determination of the LBC's rights in its ruling on Plaintiff's Motions for Declaratory Judgment. While Plaintiff's First Amended Complaint refers to Plaintiff's quest to obtain tribal recognition, Plaintiff did not originally expressly seek such relief in this action, nor can he now. *See* R. Docs. 174-75.

[80] *Pennhurst,* 465 U.S. at 106 ("We cannot 'instruct[ ] state officials on how to conform their conduct to state law.'"). This includes the claims for relief at R. Doc. 13, p. 24, ¶ 7(1) relating to Ardoin and Landry, and ¶ 7(2). *See also Plumier v. Mississippi Department of Corrections,* No. 18-13, 2018 WL 4323925 at *2 (S.D. Miss. Sept. 10, 2018) (dismissing official capacity claims barred by the Eleventh Amendment immunity without prejudice) (citing *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-89 (5th Cir. 1986) (holding that dismissal of a case based upon Eleventh Amendment immunity is for lack of subject-matter jurisdiction and would be without prejudice).

[81] *Twombly,* 550 U.S. 544 (2007) and *Iqbal,* 556 U.S. 662 (2009).

[82] *Twombly,* 550 U.S. at 555.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[83] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[84] It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[85] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[86] On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[87] While factual assertions are presumed to be true, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Fed. R. Civ. P.12(b)(6) motion.[88]

*Qualified Immunity*

Ardoin, Landry, and Cox contend that they are entitled to qualified immunity, shielding them from Plaintiff's § 1983 claims for violations of the Eighth and Fourteenth Amendments.[89] The qualified immunity defense, which operates to protect public officials who are performing discretionary tasks if their actions were objectively reasonable in light of clearly established law, requires a two-step analysis.[90] Taking the facts as alleged in the light most favorable to the plaintiff(s), the Court considers whether a defendant's conduct violated the plaintiff's

---

[83] *Iqbal,* 556 U.S. at 678, quoting *Twombly,* 550 U.S. at 570.
[84] *Iqbal,* 556 U.S. at 678.
[85] *Id.* at 679.
[86] *Id.* at 678 (internal quotation marks omitted).
[87] *Erickson*, 551 U.S. at 94.
[88] *Iqbal,* 556 U.S. at 678.
[89] R. Doc. 88-1, pp. 6-12, R. Doc. 89-1, pp. 5-10, and R. Doc. 94-1, pp. 6-15.
[90] *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).

constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.[91]  The two elements may be analyzed in either order.[92] "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[93] The plaintiff is required to prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[94]

"To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[95] "The clearly established standard does not mean that officials' conduct is protected by qualified immunity unless the very action in question has previously been held unlawful."[96] Indeed, "[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations."[97] "[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract."[98] "Officials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful."[99]

---

[91] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001)—that called for consideration of the two-pronged analysis in a particular order—should not be "regarded as an inflexible requirement").

[92] *Pearson*, 555 U.S. at 236.

[93] *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012), citing *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002).

[94] *Iqbal*, 556 U.S. at 676.

[95] *Cantrell,* 666 F.3d at 919, citing *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

[96] *Cantrell,* 666 F.3d at 919, citing *Wernecke v. Garcia,* 591 F.3d 386, 393 (5th Cir. 2009).

[97] *Cantrell,* 666 F.3d at 919, citing *Brown v. Miller,* 519 F.3d 231, 236-37 (5th Cir. 2008).

[98] *Cantrell,* 666 F.3d at 919, citing *Kinney,* 367 F.3d at 350.

[99] *Cantrell,* 666 F.3d at 919, citing *Wernecke,* 591 F.3d at 393.

### 2. Plaintiff's § 1983 Claims Fail to State a Constitutional Violation and Should be Dismissed

Plaintiff's generalized allegations against "Defendants" in his Sixth Claim for Relief purport to identify the following Eighth and Fourteenth Amendment violations: Plaintiff was falsely arrested; defendants failed to train and supervise sheriff's deputy officials; defendants promulgated policies that caused defamation as Plaintiff was walked in front of the media in handcuffs; defendants were deliberately indifferent to Plaintiff's medical needs following the arrest; defendants retaliated by leaving Plaintiff in custody longer than necessary; and defendants retaliated against Plaintiff's campaign staff.

*Defendants' Arguments*

Ardoin, Landry, and Cox argue that Plaintiff was a pretrial detainee, and thus the Eighth Amendment does not apply.[100] Defendants also argue that Plaintiff cannot state a false arrest claim under the Fourteenth Amendment; rather, false arrest is analyzed under the Fourth Amendment, which Plaintiff has not raised.[101] Ardoin and Landry contend that, even if Plaintiff's false arrest claim was considered under the Fourth Amendment, Plaintiff has not alleged any facts to show that Ardoin or Landry played any role in his arrest, detention, medical care following detention, promulgating law enforcement policies for the arresting officers, or Plaintiff's prosecution.[102]

Plaintiff alleges that he was escorted out of the front door of the SOS building so the news media could see his arrest because of Ardoin.[103] However, Ardoin did not arrest Plaintiff; Ardoin has no role in the promulgation of policies of the law enforcement officers who escorted Plaintiff

---

[100] R. Doc. 88-1 pp. 9-10, R. Doc. 89-1, p. 8, and R. Doc. 94-1, pp. 9, 12, citing *Cope v. Cogdill,* 3 F.4th 198, 206 (5th Cir. 2021), *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996), and *Guillot v. Lopinto*, No. 20-1604, 2022 WL 684159 at *13 (E.D. La. Mar. 8, 2022).
[101] R. Docs. 88-1, p. 10, R. Doc. 89-1, p. 8, and R. Doc. 94-1, p. 10, citing *Albright v. Oliver*, 510 U.S. 266 (1994) and *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010).
[102] R. Doc. 88-1, pp. 15-16 and R. Doc. 89-1, pp. 13-14.
[103] R. Doc. 13, pp. 12, 28.

out of the building; and Plaintiff has not alleged facts to show how Ardoin's alleged directive for Plaintiff to be escorted out of the SOS building in front of the media violated a constitutional right or that Ardoin knew that the arrest was unlawful.[104]

Cox contends that Plaintiff cannot prevail on a Fourth Amendment claim against him because Plaintiff cannot show that probable cause did not exist for the arrest. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[105] "The belief that an offense has been committed does not have to be correct or more likely true then false."[106] Cox contends that the specific allegations against him, *i.e.*, that Cox told Plaintiff to send a public records request to obtain the warrants and Cox's email to Owens regarding Cox's investigation of Plaintiff, do not show that Cox acted in the absence of probable cause. Rather, the email to Owens refers to Cox's investigation, as does Cox's affidavit in support of the warrant, both of which support probable cause for Plaintiff's arrest.[107] Cox's affidavit reflects that he conducted an investigation and determined that Plaintiff was not a commissioned police officer, and Judge Fred Crifasi signed the arrest warrant on the basis of probable cause.[108] Cox contends that he was not required to be perfect, but only to have made a reasonable determination that Plaintiff violated the law, and as such he is entitled to qualified immunity. Like Ardoin and Landry, Cox argues that Plaintiff has alleged no facts to show that

---

[104] R. Doc. 88-1, pp. 10-11, 15-16.
[105] R. Doc. 94-1, p. 10, citing *Velazquez v. City of Westwego,* 531 F.Supp.3d 1142, 1157 (E.D. La. 2021) (citing *United States v. Levine,* 80 F.3d 129, 132 (5th Cir. 1996)).
[106] R. Doc. 94-1, p. 10, citing *Velazquez,* 531 F. Supp. 3d at 1157 (citing *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000)).
[107] R. Doc. 94-1, pp. 11-12 and *see* R. Doc. 13-5 (Cox email to Owens) and *see* R. Doc. 13-12, pp. 1-2 (20th JDC affidavit and warrant).
[108] R. Doc. 13-6, p. 3.

Cox played any role in Plaintiff's other allegations in the Sixth Claim for Relief, *i.e.*, the training of sheriff's deputies, deliberate indifference to Plaintiff's medical care, *etc*.[109]

Setting aside the Sixth Claim for Relief, Plaintiff raises several other allegations against Defendants elsewhere in the First Amended Complaint.  Plaintiff alleges Ardoin used Plaintiff to create a diversion to assist in Ardoin's last minute qualification for the Secretary of State.[110] However, Ardoin contends that Plaintiff has alleged no facts to show how Ardoin's decision to run for Secretary of State violated any rights of Plaintiff; how the arrest created a diversion; or how Ardoin used the diversion to assist in Ardoin's qualification.[111]   As to Landry, Plaintiff's claim is that Landry failed to recognize the LBC's asserted tribal rights to hunt and gather on their lands, which fails the first prong because it does not violate any constitutional right, as Landry is not obligated to give any opinions and his opinions are only advisory.  Landry contends Plaintiff fails to allege any other violation of his constitutional rights by Landry, including Plaintiff's right to run for office.[112]   Cox argues that Plaintiff's legal conclusions, or unsupported assertions do not assert violations of Plaintiff's constitutional rights by Cox, *i.e.*, Cox has continued to pursue Plaintiff for committing crimes; Cox knows he cannot win a case against Plaintiff; Cox has "railroad[ed]" people in the past; and Cox has "attempted to injure public records by distorting the Tribal Recognition."[113]

*Plaintiff's Opposition*

In a rambling manner, Plaintiff realleges that Ardoin "sought to make a show of" Plaintiff's arrest and to use the arrest as a distraction from Ardoin's own qualifying, which was not

---

[109] R. Doc. 94-1, pp. 12-13.
[110] R. Doc. 13, p. 18.
[111] R. Doc. 88-1, p. 11.
[112] R. Doc. 89-1, p. 9.
[113] R. Doc. 94-1, p. 11.

objectively reasonable behavior such that Ardoin would have known his actions violated the law, and thus Ardoin is not entitled to qualified immunity.[114]  Plaintiff also alleges that Ardoin's actions led to Plaintiff's unlawful arrest, which was an unreasonable search and seizure, caused negative publicity, and violated Plaintiff's First Amendment rights to run for political office.[115] As to Landry, Plaintiff repeatedly alleges that Landry violated Plaintiff's rights by failing to recognize his ethnicity and that of the LBC.[116]  Plaintiff also alleges that Landry subjected him to unreasonable search and seizure and negative publicity because Landry refused to intervene in either the prosecution of Plaintiff or in recognizing the rights of the LBC.[117]

Plaintiff alleges that Cox is now working in Phares' job for Travis, but Cox has colluded with Phares to target Plaintiff (and others), including during the 2016 investigation of Plaintiff's purchase of the boat, which occurred during Plaintiff's (newly-referred to) 2016 Congressional campaign.[118] Plaintiff contends that Cox's 2018 investigation of Plaintiff arose when Plaintiff told Phares that he was running in the 2018 election, as evidenced by several exhibits newly attached to, and a litany of facts newly raised in, Plaintiff's opposition memorandum.[119] Plaintiff contends that it was not objectively reasonable for Cox to have Plaintiff arrested due to Cox's prior knowledge of Plaintiff's status as the LBC Chief of Police and his SOS commission because Cox was involved in the 2016 investigation of Plaintiff.[120] Plaintiff also newly asserts that Cox defamed

---

[114] R. Doc 111, pp. 9, 14.
[115] R. Doc. 111, pp. 9-10, 13-14.
[116] R. Doc. 111, pp. 3-5
[117] R. Doc. 111, pp. 9, 15.
[118] R. Doc. 114, pp. 2, 4-5.  Plaintiff contends that there was no finding of criminal activity during the 2016 investigation. *See* R. Doc. 13, pp. 6-7.
[119] R. Doc. 114, pp. 6-8 and *e.g.*, Randy Scrantz statement at R. Doc. 114-5, and Cox's email to SOS employee Meg Sunstrom forwarding the 20th JDC warrant on July 20, 2018 at R. Doc. 114-4.
[120] R. Doc. 114, p. 17 and *see* p. 12.

him by stating in an email that Plaintiff was not an Indigenous American who did not have a commission as LBC police chief.[121]

*Defendants' Replies*

Ardoin, Landry, and Cox contend that Plaintiff's attempts to raise new claims for the first time in opposition is improper,[122] specifically pointing to the assertions of an unconstitutional "policy or practice" claim under *Monell v. Dep't of Soc. Servs. of City of New York,* an interference with Plaintiff's political campaign under the First Amendment,[123] and a "conditions of confinement" claim under the Fourth Amendment when Plaintiff was detained at the Secretary of State building while awaiting transport by law enforcement.[124]   However, Defendants assert that even if Plaintiff had timely asserted these claims they would still fail, *to-wit*: Ardoin argues the *Monell* claim fails because neither Louisiana nor Ardoin are municipalities or local government units against whom a *Monell* claim could lie, and Plaintiff has not alleged any particular policies or practices that deprived him of his rights.[125] Further, Plaintiff's First Amendment right to run for political office was not violated, because "[T]he Constitution protects only the right to run for office in the sense of getting on the ballot," and Plaintiff's name was on the ballot for the November 2018 election, which Plaintiff admits.[126] As to any purported Fourth Amendment claim for

---

[121] R. Doc. 114, pp. 9, 12 and R. Doc. 114-11. Although the email was not attached to the First Amended Complaint, it was referenced by Plaintiff in in that document. R. Doc. 13, p. 22.

[122] R Doc. 117, p. 1, R. Doc. 118, p. 3, and R. Doc. 122, pp. 3-4, citing *Sartin v. EKF Diagnostics, Inc.*, 16-1816, 2016 WL 3598297 at *4 (E.D. La. July 5, 2016) ("…[a]n opposition to a motion to dismiss is not the place for a party to raise new factual allegations or assert new claims"), citing *Peter-Takang v. Dep't of Children & Family Servs.*, No. 14-1078, 2016 WL 69633 at *4 (E.D. La. Jan. 6, 2016); *see Goodwin v. Hous. Auth. of New Orleans*, No. 11-1397, 2013 WL 3874907 at *9, n. 37 (E.D. La. July 25, 2013).

[123] R. Doc. 117, pp. 1-3, R. Doc. 118, pp. 2-3, and R. Doc. 122, p. 3, citing *Monell,* 436 U.S. 658 (1978).

[124] R. Doc. 117, pp. 6-7, citing *Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998) (holding that until an arrest is complete, the Fourth Amendment applies).  Ardoin contends that the holding of Plaintiff at the SOS building is not confinement covered by the Eighth Amendment, which applies to incarcerated individuals. *Id.* at p. 7, citing *Ingraham v. Wright*, 430 U.S. 651, 670 (1977).

[125] R. Doc. 117, p. 2, citing *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997).

[126] R. Doc. 117, p. 2, citing *Edwards v. Reynaud*, 463 F.Supp. 1235, 1239 (E.D. La. 1979) and *see* R. Doc. 13, p. 17-18.

unlawful confinement at the Secretary of State's office, Ardoin argues the claim fails because Plaintiff agreed to return to the building,[127] and Plaintiff's own allegations defeat an unlawful arrest claim as to Landry because Plaintiff contends that Landry should have intervened to stop it, thereby conceding that Landry was not involved in the arrest.[128]

Ardoin and Landry point out that Plaintiff failed to oppose dismissal of the false arrest claim under the Fourteenth Amendment, and has thus waived this claim.[129] Ardoin argues that Plaintiff's opposition does not allege any facts in support of an Eighth or Fourteenth Amendment claim against Ardoin on any of the other allegations.[130] Similarly, Landry argues that Plaintiff did not address Landry's argument that he was not engaged in any of the actions complained of in the Sixth Claim for Relief, including that Landry violated any of Plaintiff's constitutional rights.[131] Cox similarly asserts that Plaintiff did not address Cox's argument that the Eighth Amendment does not apply to Plaintiff's claims in this case, Plaintiff has not alleged a Fourth Amendment violation, and Plaintiff did not oppose Cox's motion seeking dismissal of many of the allegations asserted in the Sixth Claim for relief, which are waived. Cox realleges that, even if a Fourth Amendment violation was alleged, it would still fail because there was probable cause for Plaintiff's arrest, which was made after an investigation and pursuant to judicially approved warrants.[132] Defendants contend that qualified immunity shields them from Plaintiff's § 1983 claims.

---

[127] R. Doc. 117, p. 7 and *see* R. Doc. 13, p. 11 ("Then I walked outside the building I walk to my vehicle…I am approached by 2 east baton rouge parish sheriff's deputies, they say Mr. Burkette we have an issue with some paperwork can we speak with you back inside for a few minutes, I replied Yes Sir, and once we went back inside they escorted me to the kitchen and say we have 2 warrants for your arrest.").
[128] R. Doc. 118, p. 9.
[129] R. Docs. 117, p. 3 and R. Doc. 118, p. 9.
[130] R. Doc. 117, pp. 6-7.
[131] R. Doc. 118, pp. 8-9.
[132] R. Doc. 122, pp. 3, 6-7.

*Analysis*

During the time in question, Plaintiff was not a convicted prisoner;[133] therefore, Plaintiff's Eighth Amendment claims against all three Defendants fail because the Eighth Amendment does not apply to the circumstances of an arrestee, nor does it apply to Plaintiff's brief detention at the Secretary of State's office.[134]  While Plaintiff asserted "unreasonable search and seizure" and specifically referred to the First Amendment and *Monell* for the first time in his opposition memoranda,[135] he failed to specifically allege a false arrest or detention claim under the *Fourth* Amendment in his First Amended Complaint, which, significantly, was filed by counsel.[136]  While Plaintiff makes a vague reference to "promulgated policies" in the Sixth Claim for Relief, a *Monell* claim for unlawful policies and practices does not lie against these Defendants because they are not municipalities or local officials thereof.[137]  Plaintiff did not address these arguments, and cannot newly raise claims in opposition.[138]  However, even if Plaintiff had specifically alleged a Fourth Amendment claim, Plaintiff has not alleged facts to support a false arrest or detention claim

---

[133] R. Doc. 13, pp. 13-14.

[134] *Hare,* 74 F.3d at 639 ("Pretrial detainees and convicted prisoners, however, look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a convicted state prisoner spring from the Eighth Amendment's prohibition on cruel and unusual punishment, *see Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and, with a relatively limited reach, from substantive due process. The constitutional rights of a pretrial detainee, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).").

[135] R. Doc. 111, pp. 9-10, 14 and R. Doc. 114, pp. 13-14, 18.

[136] *Gutierrez*, 139 F.3d at 452 ("While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments. *See Brothers v. Klevenhagen,* 28 F.3d 452, 455–56 (5th Cir. 1994); *Valencia v. Wiggins,* 981 F.2d 1440, 1445 (5th Cir. 1993). Although the point at which an arrest ends and pretrial detainment begins is not always clear, *see Valencia,* 981 F.2d at 1449 n. 44, we have held that the Fifth or Fourteenth Amendments begin to protect persons "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Id.* at 1443–43 ([italicized] emphasis in original).").

[137] *See Burge v. Par. of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999*)* ("In *Monell,* the Supreme Court held that a local government is liable under § 1983 for its policies that cause constitutional torts. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.') (citations omitted).

[138] *Sartin,* 2016 WL 3598297 at *4 ("…'[a]n opposition to a motion to dismiss is not the place for a party to raise new factual allegations or assert new claims.'").

against any of these Defendants. Despite Ardoin's alleged directive to have Plaintiff escorted out of the SOS building, there is no allegation that Ardoin was involved with the actual arrest of Plaintiff, and as Landry points out, Plaintiff appears to concede that Landry was not actually involved in his arrest because Plaintiff argues that Landry should have intervened to stop it. While Cox signed the affidavits underlying the warrants leading to Plaintiff's arrest, the motion papers and exhibits attached to Plaintiff's First Amended Complaint show that Cox was assigned to investigate Plaintiff after receiving a complaint from Taylor, and Cox obtained warrants that were judicially approved as supported by adequate probable cause.[139] As Cox points out, he was not required to be correct as to whether a crime was actually committed, only that he acted reasonably,[140] and Plaintiff has not alleged any specific facts showing that Cox engaged in any malicious actions that tainted the warrants giving rise to an exception under the independent intermediary doctrine.[141] Plaintiff argues that his arrest was unlawful because Cox was aware of "the commission card of Billy Burkette as Chief of Police."[142] However, the state court presiding over Plaintiff's criminal trial specifically held that Plaintiff's 2016 SOS commission did not

---

[139] R. Doc. 114, pp. 7-8, and R. Docs. 13-5, 13-6, and 13-12, pp. 1-2. *See Velazquez,* 531 F.Supp.3d at 1157 ("With regard to the reasonableness of her arrest, 'the general rule [is] that [such a] Fourth Amendment seizure[ ] [is] reasonable only if based on probable cause.' *Bailey v. United States,* 568 U.S. 186, 192, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013) (internal quotations and citation omitted). And, if probable cause exists, the claim fails.") and *Deville v. Marcantel,* 567 F.3d 156, 170 (5th Cir. 2009) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.") (citations omitted). The fact that Plaintiff's arrest was made pursuant to a judicially approved warrant finding probable cause distinguishes Plaintiff's arrest from those in *Mesa v. Prejean*, 543 F.3d 264 (5th Cir. 2008) (reversing summary judgment finding probable cause for arrest), cited by Plaintiff, because the arrests in *Mesa* were not made pursuant to warrants. *Id.* at 268 and R. Doc. 114, p. 17.

[140] *See Velazquez,* 531 F.Supp.3d at 1157 ("The belief that an offense was committed need not 'be correct or more likely true than false.' *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000).").

[141] *See Shaw v. Villanueva,* 918 F.3d 414, 417 (5th Cir. 2019) ("Generally, if an independent intermediary, such as a justice of the peace, authorizes an arrest, then the initiating party cannot be liable for false arrest. We recently explained this in *McLin*: '[T]he intermediary's decision breaks the chain of causation for false arrest ....' In fact, the initiating party can even be malicious. That alone still won't overcome the independent-intermediary doctrine. True, there is an exception to the doctrine. Under *McLin*, if the plaintiff shows that the defendant tainted the intermediary's decision-making process, the defendant can be liable. But the plaintiff has to show that the defendant maliciously withheld relevant information or otherwise misdirected the intermediary.") (citations omitted).

[142] R. Doc. 114, pp. 9, 12.

bestow law enforcement authority on him; only the LBC could confer that authority (assuming the tribe had the authority to give it, which the state court did not decide) and it would only give Plaintiff enforcement authority while on LBC territory; and Plaintiff was not on LBC territory while at the Clinton DMV.[143] Thus, even if Cox had knowledge of Plaintiff's 2016 SOS commission, that did not vitiate probable cause for the warrant involving Plaintiff's conduct at the Clinton DMV.  Plaintiff did not allege facts to show that any of these Defendants was personally involved in his brief detention at the SOS building. Therefore, Plaintiff's arrest and detention were not violative of the Fourth Amendment on the facts alleged and the documents attached to the First Amended Complaint.[144]

Plaintiff did not explicitly refer to the First Amendment in his claim for interference with his right to run for political office, but even considering the related facts, the claim fails. As Ardoin notes, his alleged directive for Plaintiff to be escorted out of the SOS building did not preclude Plaintiff from running in the campaign. Plaintiff was placed on the ballot, which he acknowledges. Plaintiff has alleged no other facts to show a violation of his First Amendment rights by either Ardoin or Landry. While Cox instigated a complaint against Plaintiff and provided the probable

---

[143] R. Doc. 103-1, p. 3. The Court takes judicial notice of the transcript of Plaintiff's criminal trial as it was a transcribed court proceeding.  *See Martin v. Roy,* No. 20-339, 2022 WL 894599, *9 (M.D. La. March 25, 2022) (taking judicial notice of criminal trial transcript) (other citations omitted). While Plaintiff's conviction was reversed by the Louisiana Supreme Court, the Louisiana Supreme Court did not reverse the state court's findings on these issues. Rather, the Louisiana Supreme Court concluded only that the evidence did not show that Plaintiff had the intent to obtain a "special advantage," as required by La. R.S. 14:112 (false personation, the crime Plaintiff was convicted of violating) while assisting his daughter at the DMV.  *See* R. Doc. 67-2 (Louisiana Supreme Court judgment: "**PER CURIAM** Writ granted. Relator was charged with a violation of LSA-R.S. 14:112, which requires the intent to obtain a "special privilege or advantage." We find the evidence insufficient to show that, in assisting his daughter in obtaining a driver's license, relator had the intent to obtain a "special advantage." We therefore reverse and vacate relator's conviction and sentence. **CONVICTION REVERSED; SENTENCE VACATED"**).

[144] All of Plaintiff's purported facts newly asserted in opposition, including the involvement of Scrantz, Cox's involvement in the 2016 investigation of Plaintiff, Plaintiff's 2016 Congressional campaign, and the investigation of non-parties, are not considered because they are not contained in the First Amended Complaint or attached exhibits. *Sartin,* 2016 WL 3598297 at *4.  Furthermore, any claims arising out of tortious conduct that occurred in 2016 are likely prescribed. *See Eldredge v. Martin Marietta Corp.,* 207 F.3d 737, 742 (5th Cir. 2000) ("Under Louisiana Civil Code article 3492, "[d]elictual actions are subject to a liberative prescription of one year." La. Civ. Code Ann. art. 3492.").

cause affidavit for the arrest warrant, those actions also did not preclude Plaintiff from running in the campaign.[145]

Turning to the other allegations in the Sixth Claim for Relief that purport to raise Fourteenth Amendment violations, the only one that arguably relates to Ardoin is the claim of Plaintiff being escorted out of the SOS building in front of the news media. However, that claim, and Plaintiff's only other specific allegation against Ardoin, *i.e.*, that Ardoin used the arrest as a diversion to assist Ardoin's last minute qualification for the Secretary of State, do not allege a violation of Plaintiff's constitutional rights. Despite Ardoin's alleged directive, Plaintiff does not have a constitutional right to use a particular door to exit a building regardless of whether the news media is present,[146] and Plaintiff alleged no facts to show that Ardoin (or Landry or Cox), was responsible for the promulgation of law enforcement policies that caused defamation. Plaintiff has also alleged no facts to show how Ardoin's decision to run for Secretary of State violated any rights of Plaintiff or how Ardoin used the diversion to assist in Ardoin's qualification. As explained above, Plaintiff's allegations regarding Landry's refusal to intervene in either Plaintiff's criminal proceedings or in recognizing the rights of the LBC are newly raised, fail to state a claim, and are barred by Eleventh Amendment immunity.[147] Plaintiff's remaining allegations against Cox, which are that Cox has pursued Plaintiff for committing crimes,[148] has "railroaded" people, and knows that he cannot win against Plaintiff, are Plaintiff's conclusory suppositions and do not assert

---

[145] *See Edwards*, 463 F.Supp. at 1239 ("[It is clear from the facts alleged by plaintiff that he was not prevented from becoming a candidate, or getting on the ballot, by defendant Reynaud, for he alleges that Reynaud's actions occurred during his candidacy, causing him, allegedly, to have to suffer through a second primary.").

[146] To the extent that the media coverage resulted in criticism of Plaintiff, *see id.* ("Furthermore, the Constitution protects only the right to run for office in the sense of getting on the ballot. There is no constitutional right to run for office without public criticism of a candidate's qualifications for the office he seeks. *See, Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971).").

[147] *Pennhurst*, 465 U.S. at 106 ("We cannot 'instruct[ ] state officials on how to conform their conduct to state law.'").

[148] *See Cuadra.*, 626 F.3d at 814 ("In *Albright,* the Court held that there was no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause.").

specific constitutional violations.[149]    Plaintiff alleged no facts in support of the remaining allegations in the Sixth Claim for Relief against Ardoin, Landry, or Cox, *i.e.*, failure to train sheriff's deputies, deliberate indifference to his medical needs, and retaliation for leaving Plaintiff in custody longer than necessary and threatening campaign support staff.    Therefore, Plaintiff's § 1983 claims should be dismissed because Defendants are entitled to qualified immunity due to Plaintiff's failure to show a violation of his constitutional rights,[150] and because Plaintiff has failed to state any viable § 1983 claims.

### D. Plaintiff Has Failed to State a Claim for Conspiracy Under § 1985, Which Claim Should be Dismissed

*Defendants' Arguments*

Defendants contend that Plaintiff cannot establish the elements of a conspiracy claim under § 1985(3), which requires Plaintiff to show: (1) a conspiracy, (2) for the purpose of depriving someone equal protection of the laws, (3) an act in furtherance of the conspiracy, (4) injury to a person or deprivation of any right of a citizen of the United States, and (5) that the action of the conspirators is motivated by a racial animus.[151]    While Plaintiff generally alleges that he was falsely prosecuted because of his Native American heritage,  Ardoin contends that Plaintiff has not alleged any facts to show that Ardoin's actions against Plaintiff were racially motivated, including Ardoin's directive for Plaintiff to be escorted out of the SOS building or in Ardoin's own decision to run for office.  Ardoin argues that Plaintiff has not alleged facts to support his claims that his

---

[149] The First Amended Complaint also vaguely alleges that "Defendant State of Louisiana, through the State Police employee Bill Cox, is liable to the Petitioner herein in that State Police did not train or supervise Mr. Cox allowing him the authority to maliciously pursue and persecute Plaintiff and thus is liablie [sic] under Article 2317 of the Louisiana Civil Code and the theory of *respondeat superior* …." R. Doc. 13, p. 26.  This appears to be a failure to train claim against the LSP, not Cox, but the LSP is not a party to this case.

[150] Defendants also asserted arguments regarding the second qualified immunity prong.  Those arguments are not reached because Plaintiff has not established the first prong.

[151] R. Doc. 88-1, p. 12, R. Doc. 89-1, pp. 10-11, and R. Doc. 94-1, pp. 15-16, citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 389 (5th Cir.2017).

arrest and brief detention at the SOS building were based on his race. Ardoin also contends that Plaintiff has alleged no facts to show that Ardoin was part of a conspiracy with any of the other Defendants, that Ardoin took any act in furtherance of a conspiracy, or that Ardoin deprived Plaintiff of any rights.[152] Landry similarly contends that, while Plaintiff alleges that he was falsely prosecuted because he sought a recognition of his aboriginal rights, Plaintiff has not shown that his arrest arose out of Landry's opinion or that Landry deprived Plaintiff of any rights.  Landry and Cox contend that, while Plaintiff alleges that they communicated with each other, Plaintiff has not stated facts to show what was said, much less that their communication was a conspiracy against Plaintiff motivated by his race.[153]

Cox argues that Plaintiff's allegation that he was falsely prosecuted/arrested because of his Native American heritage or his pursuit of Native American rights is conclusory and unsupported by any facts showing racial animus on Cox's part or that Plaintiff was arrested *because of* his heritage. Cox similarly argues that there are no facts showing that Cox was motivated by race when he advised Plaintiff to submit a public records request to obtain copies of the warrants, or when he said that the State does not officially recognize the LBC, which statement did not further Plaintiff's arrest. Cox contends that Plaintiff was not deprived of any rights because Plaintiff ran in the election.[154]

For these same reasons, Defendants contend that Plaintiff cannot establish the elements of a conspiracy claim under the equal protection portion of § 1985(2), which prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the

---

[152] R. Doc. 88-1, pp. 12-14.
[153] R. Doc. 89-1, pp. 11-12 and R. Doc. 94-1, p. 17.
[154] R. Doc. 94-1, pp. 16-17.

rights of others to equal protection.[155]  As Defendants note, when a claim is asserted under the equal protection portion of § 1985(2), the class-based animus requirement of § 1985(3) applies, and there must be a showing that a conspiracy exists.  Plaintiff has not pleaded any facts to show racially motivated behavior by these Defendants or that they were involved in a conspiracy against Plaintiff to deny him equal protection of the law.[156]

*Plaintiff's Opposition*

In support of his conspiracy claim against Ardoin, Plaintiff argues that "Ardoin's office working in collusion with Travis/Phares/Cox had to hold Burkette and deprived of liberty without due process of law, the wrongful arrest would amount to a violation of Eight Amendment Rights through the 14th Amendment…."[157]  In support of his conspiracy claim against Landry, Plaintiff alleges that Landry's failure to recognize the LBC's rights and/or to intervene in Plaintiff's criminal proceedings "was a driving force in the wrongful investigation, issuance of a warrant and district court finding of guilt."[158]  Similarly, in support of his conspiracy claim against Cox, Plaintiff alleges that Landry's opinion gave rise to Cox's investigation of Plaintiff and Cox's statement that Plaintiff is not Native American, and Cox facilitated the arrest of Plaintiff, which was performed to create a "dramatic event" to benefit Ardoin.[159]

*Analysis*

Plaintiff has not shown a violation of any of his constitutional rights, a necessary element of conspiracy, facts supporting the existence of a conspiracy among Defendants, or that Defendants were motivated by race.  Instead, Plaintiff has only set forth generalized, conclusory allegations of

---

[155] R. Doc. 88-1, pp. 14-15, R. Doc. 89-1, p. 13, R. Doc. 94-1, p. 18.  Plaintiff has not alleged a violation of the first portion of § 1985(2).  R. Doc. 13, pp. 26-27.
[156] R. Doc. 88-1, pp. 14-15, R. Doc. 89-1, p. 13, and R. Doc. 94-1, p. 18.
[157] R. Doc. 111, p. 15.
[158] R. Doc. 111, p. 16.
[159] R. Doc. 114, pp. 10-11, 16, 19.

a conspiracy, unsupported by any facts. As to Ardoin, Plaintiff has not alleged any facts to show that Ardoin was personally aware of Plaintiff's Native American heritage, much less that Ardoin engaged in any actions with racial animus toward Plaintiff when Plaintiff was escorted out of the SOS building. Plaintiff was a candidate on the November 2018 ballot. Plaintiff has not alleged facts to support the claim that Landry's advisory opinion regarding the LBC's rights had any bearing on Plaintiff's subsequent arrest, and as explained above, Landry had no obligation to intervene in Plaintiff's criminal proceeding. While Cox questioned Plaintiff's Native American heritage and stated to an LBC member that the State does not officially recognize the LBC, those statements did not violate Plaintiff's rights, and Plaintiff has not shown how those statements relate to his arrest.

Plaintiff has only set forth generalized, conclusory allegations of a conspiracy, unsupported by any facts, and the evidence in the record, including the warrant affidavits, as well as the transcript of Plaintiff's criminal trial, contradict Plaintiff's claim of a conspiracy among Defendants. Rather, the evidence shows that Cox's investigation and Plaintiff's arrest arose from Taylor's complaint about Plaintiff carrying a firearm and statements that he was a commissioned police officer while at the Clinton DMV, a state building. This information resulted in the issuance of warrants by state court judges that led to Plaintiff's arrest while at the SOS building because, according to Plaintiff's opposition memorandum to the Cox Motion, Plaintiff was recognized by a SOS employee, who had previously spoken to Cox about the investigation of Plaintiff and the impending issuance of the warrants.[160]

---

[160] *See* R. Doc. 114, pp. 6, 8, and R. Docs. 114-2 and 114-3. The unverified exhibits attached to Plaintiff's opposition memorandum on this issue are not attached to the First Amended Complaint and are, therefore, not considered. However, as noted above, the Court takes judicial notice of the transcript of Plaintiff's criminal trial at R. Doc. 103-1, as it was a transcribed court proceeding. *See Martin,* 2022 WL 894599, *9.

Finally, Plaintiff has failed to allege any acts or statements in furtherance of a conspiracy by and between these Defendants to deprive Plaintiff of his rights *because* he is Native American. The First Amended Complaint acknowledges that Plaintiff has no evidence of a conspiracy, as he admitted that his conspiracy claims are based on "links" between the Defendants that he searched for, not facts: "Now how [Defendants, and others] were all involved is one of the biggest missing pieces of the face of the puzzle I said….I searched for links of how did anyone know to arrest me if there was no warrant(s)….").[161] For all these reasons, Plaintiff's § 1985 conspiracy claims should be dismissed for failure to state a claim.

### E.  Supplemental Jurisdiction Should be Declined Over State Law Claims

To the extent Plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims other than La. C.C. art. 2317, which is not clear,[162] a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[163] Since dismissal is recommended over all Plaintiff's federal claims against Ardoin, Landry, and Cox, it is also recommended that supplemental jurisdiction be declined over any state law claims against these defendants.

---

[161] R. Doc. 13, p. 20.  As noted above, there were, in fact, arrest warrants issued.

[162] The First Amended Complaint vaguely alleges that Defendants "promulgated polices that caused the defamation of the Plaintiff," and that Phares defamed Plaintiff on the news.  R. Doc. 13, pp. 16, 28.

[163] *Moore v. Singh,* No. 17-191, 2018 WL 4517630, at *5 (M.D. La. Aug. 30, 2018), report and recommendation approved, No. 17-191, 2018 WL 4517453 (M.D. La. Sept. 20, 2018), citing 28 U.S.C. § 1367.

**F.  Leave to Amend Should be Denied Because Further Amendments Would Be Futile, and/or Plaintiff Has Already Amended and Pleaded His Best Case**

Ordinarily, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed."[164] Granting leave to amend, however, is not required if the plaintiff has already pleaded his "best case."[165] Similarly, a district court need not grant a futile motion to amend.[166] "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted."[167] Plaintiff has not sought additional leave to amend in response to the motions filed by these Defendants, but, if he does, leave should be denied.

As explained above, Defendants are entitled to Eleventh Amendment immunity on Plaintiff's official capacity claims, such that amendment as to those claims would be futile. Plaintiff has admitted that his conspiracy claim is based solely on speculation, and the evidence attached to the First Amended Complaint and of which the Court can take judicial notice contradicts Plaintiff's conspiracy allegations, and, significantly, also contradicts his claim of being a commissioned law enforcement officer with authority outside of LBC territory, which is the primary allegation he uses in support of his § 1983 false arrest and § 1985 conspiracy claims.[168] Further amendments would be futile as to these claims because the state court held that Plaintiff's SOS commission alone did not bestow law enforcement authority on Plaintiff, who at most had enforcement authority on LBC tribal lands, which is not at issue in this proceeding. Similarly, the Eighth Amendment does not apply to Plaintiff's allegations, and his First Amendment right to run

---

[164] *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.,* 710 Fed. Appx 625, 627 (5th Cir. 2017), citing *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (citation omitted).
[165] *Wiggins,* 710 Fed. Appx at 627, citing *Brewster*, 587 F.3d at 768 (citation omitted).
[166] *Wiggins,* 710 Fed. Appx at 627, citing *Legate v. Livingston,* 822 F.3d 207, 211 (5th Cir. 2016) (citation omitted).
[167] *Id.*
[168] Plaintiff also conducted some discovery while his criminal case was pending.  *See, e.g.,* R. Doc. 114, p. 6 (referring to the Scrantz statement he obtained 'in compliance with [a] Subpoena in the criminal matter.').

in an election was not violated because he ran in the November 2018 election, so further amendments to these claims would also be futile. Although not specifically alleged, any Fourth Amendment claim would also fail against Ardoin and Landry because they were not personally involved in the actions that could potentially underlie such a claim (*i.e.*, Plaintiff's arrest and detention, *etc.*). Although Cox was involved in Plaintiff's arrest, any Fourth Amendment claim against him fails because probable cause existed for Plaintiff's arrest, which entitles Cox to qualified immunity.

Finally, Plaintiff has pleaded his best case. Plaintiff filed two counseled Complaints of more than twenty pages each, asserting myriad facts. However, even considering these scattershot pleadings liberally, Plaintiff has failed to state cognizable claims, and in particular, an underlying violation of his constitutional rights. Notably, Plaintiff filed his First Amended Complaint *after* Travis and Phares filed their first Motion to Dismiss, so Plaintiff has already availed himself of the opportunity to cure pleading deficiencies.[169] Furthermore, Plaintiff could have sought leave to amend after Ardoin, Landry and Cox filed their Motions to Dismiss, but he did not, although he was represented by counsel when the Motions were filed and during the briefing periods.[170] As Plaintiff has already had the opportunity to cure pleading deficiencies, further amendments to the viable claims is futile, and Plaintiff has already pleaded his best case, any further leave to amend should be denied.

---

[169] *See* R. Docs. 12 and 13.

[170] R. Docs. 88-89, 94 (Motions) and R. Docs. 111, 114 (Oppositions). Plaintiff could have also sought leave to amend after Travis and Phares' filed their second and third Motions to Dismiss but did not. As is the Court's practice (and as currently required by Local Civil Rule 12), their first Motion to Dismiss was terminated without prejudice when Plaintiff filed the First Amended Complaint. R. Doc. 20. Travis and Phares then filed a second Motion to Dismiss, which Plaintiff opposed. That motion was terminated without prejudice when the case was stayed. R. Docs. 33, 42, 52. Travis and Phares then filed their third Motion to Dismiss, which Plaintiff opposed, and which is the subject of a separate Report and Recommendation. R. Docs. 74, 85.

## III.    RECOMMENDATION

Plaintiff's official capacity claims against Ardoin, Landry, and Cox for monetary relief, injunctions, and a declaration are barred by Eleventh Amendment immunity, which they have not waived, and the *Ex Parte Young* exception does not apply.  Ardoin, Landry, and Cox are entitled to qualified immunity as to Plaintiff's § 1983 claims.  Alternatively, Plaintiff's § 1983 claims fail to state a claim, as do his § 1985(2) and § 1985(3) conspiracy claims.  Since dismissal of all federal claims is recommended, supplemental jurisdiction should be declined. Finally, Plaintiff has pleaded his best case, and leave to amend would be futile, such that, if sought, further leave to amend should be denied.

Accordingly,

**IT IS RECOMMENDED** that the Motion to Dismiss,[171] filed by R. Kyle Ardoin; the Motion to Dismiss,[172] filed by Attorney General Jeff Landry; and the Motion to Dismiss,[173] filed by William Cox, be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that all Plaintiff Billy Burkette's official capacity claims against Ardoin, Landry, and Cox be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that all Plaintiff Billy Burkette's individual capacity claims be **DISMISSED WITH PREJUDICE**.

---

[171] R. Doc. 88.
[172] R. Doc. 89.
[173] R. Doc. 94.

**IT IS FURTHER RECOMMENDED** that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and that further leave to amend be denied, if sought.

Signed in Baton Rouge, Louisiana, on February 23, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**